COMMONWEALTH & another[1] *vs.* KEVIN KELLEY.

Suffolk. September 10, 1991. - November 18, 1991.

Present: LIACOS. C J., NOLAN. LYNCH. & O'CONNOR. JJ.

*Supreme Judicial Court*, Superintendence of inferior courts. *Constitutional Law*, Ex post facto law. *Statute*, Construction. *Practice, Criminal*, Juvenile delinquency proceeding. *Practice, Civil*, Proceeding to extend commitment of juvenile.

Statute 1990, c. 267, §§ 6-9, amending G. L. c. 120, §§ 16-19, effective December 5, 1990, by increasing the time period of an order extending commitment of juveniles to age twenty-one, as applied to proceedings based on events that occurred before the amendment became effective, was a constitutionally prohibited ex post facto law, where its application increased the punishment beyond that which could have been imposed at the time of the offense and reduced the burden on the Commonwealth by eliminating the requirement that it prove that the juvenile's dangerousness arose out of his mental or physical deficiency, disorder, or abnormality. [214-217]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 25, 1991.

The case was heard by *Greaney*, J.

*Frank Mondano* for the defendant.

*Nijole Makaitis*, Special Assistant Attorney General, for the plaintiffs, submitted a brief.

LYNCH, J. The Commonwealth and the Department of Youth Services (department) appeal from the denial of their petition for relief pursuant to G. L. c. 211, § 3 (1990 ed.), by a single justice of this court. On February 19, 1990, the defendant, then sixteen years old, was charged with murder. G. L. c. 265, § 1 (1990 ed.). The Commonwealth requested

---

[1]The Department of Youth Services.

a transfer hearing pursuant to G. L. c. 119, § 61.[2] The request for transfer was denied, and on July 21, 1990, the defendant admitted to charges of delinquency by reason of murder and was committed to the department.

The provisions of G. L. c. 120, §§ 16-19, as appearing in St. 1990, c. 267, §§ 6-9, pertain to the extension of commitment of juveniles and became law on December 5, 1990. On December 6, 1990, the department ordered the defendant's commitment extended, based on the amended statute. The defendant's motion to vacate the department's order was allowed in the Boston Division of the Juvenile Court Department. The judge ordered the defendant's release from custody, but stayed the order to give the Commonwealth time to petition for relief in the appropriate appellate court. A single justice of this court denied the petition for relief pursuant to G. L. c. 211, § 3. The stay was vacated and the juvenile was discharged. We affirm.

Decisions of a single justice will not be disturbed on appeal absent clear error of law or abuse of discretion. *Fogarty* v. *Commonwealth*, 406 Mass. 103, 106 (1989). Here we are presented with a pure question of law. The single justice ruled that the change effectuated by St. 1990, c. 267, § 7, cannot lawfully be applied to reduce the amount of proof necessary to extend the defendant's commitment to the department. We agree.[3]

---

[2]A transfer hearing is held to determine whether a juvenile should be transferred for trial as an adult. A judge must find by clear and convincing evidence that the juvenile presents a significant danger to the public as demonstrated by the nature of the offense charged and the juvenile's past record of delinquent behavior, if any, and that the juvenile is not amenable to rehabilitation as a juvenile. G. L. c. 119, § 61 (1988 ed.). Statute 1990, c. 267, § 3, in part, creates a rebuttable presumption that, when a juvenile is charged with murder in the first or second degree, such juvenile is a significant danger to the public and not amenable to rehabilitation.

[3]Prior to the amendment, the statute authorized the department and the court to extend a juvenile's commitment on a determination that the juvenile "would be physically dangerous to the public *because of the person's mental or physical deficiency, disorder or abnormality*" (emphasis added). See G. L. c. 120, §§ 17, 18 (1988 ed.). The amendment deleted the italicized language. Following the amendment, the department and the court

Article 1, § 9, of the United States Constitution and art. 24 of the Declaration of Rights of the Massachusetts Constitution provide protection from the operation of ex post facto laws. As we stated in *Commonwealth* v. *Bargeron,* 402 Mass. 589, 590 (1988):

> "The classical exposition of an ex post facto law is found in the primordial case of *Calder* v. *Bull,* 3 U.S. (3 Dall.) 386, 390 (1798): '1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime,* or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*' " (Emphasis in original.)

In *News Group Boston, Inc.* v. *Commonwealth,* 409 Mass. 627 (1991), the court had occasion to consider whether an amendment to G. L. c. 119, § 65 (1990 ed.), as applied to the juveniles in that case, was an unconstitutional, ex post facto law. The amendment changed a long-standing requirement excluding the public from a Juvenile Court session, to provide generally that the public not be excluded from such sessions when the juvenile is charged with delinquency by reason of murder. In concluding that the amendment was not an ex post facto law, the court reasoned that, "[i]f this amendment purported to increase the *punishment* that would be imposed on the juveniles beyond that which could have been imposed at the time of the alleged offenses, it would be an ex post facto law" (emphasis added). *Id.* at 631.

---

need only determine that the juvenile "would be physically dangerous to the public."

The court reasoned, for example, that the statute reversing the presumption that juveniles charged with delinquency be kept within the juvenile justice system arguably "could not constitutionally be applied to juvenile charges based on pre-amendment events, because to do so would violate the ban on ex post facto laws."[4]

That reasoning applies here because the amendment increases the punishment beyond that which could have been imposed at the time of the offense. Statute 1990, c. 267, § 9, amended G. L. c. 120, § 19, by increasing the time period of an extension order to age twenty-one. Prior to the amendment, a juvenile adjudged a danger to the public because of physical or mental deficiency could not have his commitment extended beyond age twenty without a new order and a new extension hearing. See *Commonwealth v. Rosenberg*, 410 Mass. 347, 359-360 (1991). Furthermore the amendment reduces the burden on the Commonwealth by eliminating the requirement that it prove that the juvenile's dangerousness arose out of his mental or physical deficiency, disorder, or abnormality. Thus the two critical elements necessary in an ex post facto law are met, its application being both retrospective and more burdensome to the defendant. *Weaver v. Graham*, 450 U.S. 24, 35-36 (1981) (Florida statute reducing "gain time"[5] previously available under the repealed statute constricted the opportunity to earn early release and made more onerous the punishment for crimes committed before its enactment). *Miller v. Florida*, 482 U.S. 423, 430-431 (1987) (revised sentencing guidelines law both retrospective and more onerous than law in effect at the time of petitioner's crime).

---

[4]Statute 1990, c. 267, § 3, amended G. L. c. 119, § 61, by providing that, "[i]f a child is charged with murder in the first or second degree, and a finding of probable cause has been made, there shall exist a rebuttable presumption that the child presents a significant danger to the public and that such child is not amenable to rehabilitation within the juvenile justice system." *News Group Boston, Inc. v. Commonwealth*, 409 Mass. 627, 631-632 n.4 (1991).

[5]"Gain time," allowed for good behavior, reduces the amount of time a prisoner must serve on a sentence.

The Commonwealth and the department argue that not every legal change having a detrimental effect on an individual and relating to acts committed by him before the change is automatically a prohibited ex post facto law. See *Commonwealth* v. *Bargeron, supra* at 594 (extension of statute of limitations is procedural and not ex post facto law). See also *Commonwealth* v. *Murphy*, 389 Mass. 316 (1983) (enhanced penalty imposed on conviction of driving while under the influence of intoxicating liquor, because of previous assignment to an alcohol education program, not ex post facto law). Those decisions have no application here where the change is neither procedural nor an enhanced penalty imposed for a subsequent conviction because of prior conduct. The amendment becomes an ex post facto law when applied in these circumstances because it is both retrospective and onerous. *Miller* v. *Florida, supra. Weaver* v. *Graham, supra.*

Although we have said in other contexts that the juvenile justice system is not a penal system, *Commonwealth* v. *Page*, 339 Mass. 313, 316 (1959); see *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 666-668 (1978); *Sylvester* v. *Commonwealth*, 253 Mass. 244, 247 (1925), neither do these decisions apply in the situation before us. Here the amendment not only increases to beyond the age of twenty the period that the juvenile may be held in custody, but in conjunction with other statutory provisions, could bring about his transfer to the adult correctional department for that additional period. G. L. c. 120, § 19.

Ordinarily " '[j]uvenile' jurisdiction ends when a child reaches eighteen; the court in its juvenile session has no authority to commit a person over eighteen to the care of the department." *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 791 (1981). In that case, the court concluded that the Legislature intended that a defendant in an extended commitment proceeding is to be afforded the same procedural safeguards as in a criminal trial. *Id.* at 792. Thus the criminal nature of the extended commitment process adds strength to our conclusion that the amendment in ques-

tion would unconstitutionally burden the defendant if applied as the Commonwealth and the department propose.

*Judgment affirmed.*