COMMONWEALTH *vs.* A JUVENILE.

Hampden. May 7, 1992. - July 17, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Constitutional Law,* Ex post facto law, Indictment. *Delinquent Child. Practice, Criminal,* Juvenile delinquency proceeding. *Probable Cause. Grand Jury.*

A juvenile court judge correctly dismissed an indictment returned under the provisions of G. L. c. 119, § 61, as amended by St. 1991, c. 488, § 3, effective December 31, 1991, that alleged an offense taking place on December 27, 1991, where the amended statute, as applied to the juvenile, was both retrospective and reduced the Commonwealth's evidentiary burden, and thus constituted an ex post facto law. [150-153]

INDICTMENT found and returned in the Superior Court Department on February 24, 1992.

Upon filing of the indictment in the Springfield Division of the Juvenile Court Department, dismissal was ordered by *Rebekah J. Crampton,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Judy G. Zeprun,* Assistant District Attorney, for the Commonwealth.

*Terry Scott Nagel* for the juvenile.

LYNCH, J. The Commonwealth appeals from an order of a judge in the Juvenile Court allowing the juvenile's motion to dismiss an indictment charging murder in the second degree.[1] A grand jury had returned the indictment which was

---

[1] The juvenile was arrested on December 28, 1991, in connection with an automobile theft, high speed chase, and fatal accident which took place on December 27, 1991. The juvenile was charged, on December 30, 1991, on Juvenile Court complaints, with murder and vehicular homicide arising out of this incident. These complaints are still pending in Juvenile Court.

filed with the Superior Court clerk, who then ordered the indictment filed in the Juvenile Court.[2] The judge in the Juvenile Court made findings of fact and rulings of law, and dismissed the indictment. The Commonwealth appealed pursuant to Mass. R. Crim. P. 15 (a) (1), 378 Mass. 882 (1979). We transferred the appeal here on our own motion and we now affirm.[3] At issue is whether an amendment to G. L. c. 119, § 61 (1990 ed.), adopted after the date of the offenses in question, is applicable to this juvenile. We determine it is not.

1. *Statutory background.* We summarize the statutory scheme in existence at the time of the juvenile's alleged offenses on December 27, 1991. General Laws c. 119, §§ 52 et seq. (1990 ed.), deals with children between the ages of seven and seventeen years who commit offenses against the laws of the Commonwealth. A juvenile could be charged with delinquency by reason of murder only by a complaint filed in the Juvenile Court. Under G. L. c. 119, § 61 (1990 ed.), a transfer hearing, consisting of two parts, then would be held to determine whether such juvenile should be transferred for trial as an adult. In the first part, the judge would determine whether probable cause existed to believe that the juvenile committed the offense or violation charged. In the second part, if probable cause was found, the judge then would determine whether the juvenile presented a danger to the public and whether the juvenile was amenable to rehabilitation within the juvenile justice system. After a finding of probable cause against a juvenile charged with murder in the first or second degree, the statute creates a rebuttable presumption that such juvenile was a significant danger to the public and was not amenable to rehabilitation. If the presumption is not

---

[2]There is no statutory provision governing the procedure to be followed when an indictment is returned against a juvenile under the provisions of G. L. c. 119, § 61, as amended by St. 1991, c. 488, § 3.

[3]The Commonwealth also filed a petition in the county court under G. L. c. 211, § 3 (1990 ed.), seeking a stay of further proceedings in the Juvenile Court. The single justice entered a temporary stay, and the case was in that procedural posture when we transferred the matter here.

rebutted, the delinquency complaint would be dismissed and a criminal complaint would issue. The juvenile then would be tried as an adult.

2. *The amendment.* The Legislature amended G. L. c. 119, § 61, by St. 1991, c. 488, §§ 2-6, effective December 31, 1991, four days after the juvenile's alleged offense.[4] Under § 3, the Commonwealth, in cases of murder in the first and second degree, can elect to proceed by filing a complaint or by obtaining an indictment. If an indictment is obtained, no probable cause hearing is held.

3. *Ex post facto application.* The judge determined that the amendment was an ex post facto law as applied in these circumstances.[5] We agree.

In *Commonwealth* v. *Kelley*, 411 Mass. 212, 214 (1991), we recently restated *Commonwealth* v. *Bargeron*, 402 Mass. 589, 590 (1988):

> " 'The classical exposition of an ex post facto law is found in the primordial case of *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386, 390 (1798): "1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender*." ' (Emphasis in original.)"

---

[4]The Commonwealth does not contend that other provisions of St. 1991, c. 488, which set the sentence of a juvenile found delinquent by reason of murder in the first degree to from fifteen to twenty years, or found delinquent by reason of murder in the second degree to from ten to fifteen years, apply to this juvenile. St. 1991, c. 488, § 7.

[5]The judge apparently based her ruling on both the Federal and Massachusetts Constitutions.

At the time of the juvenile's arrest, the Commonwealth could only proceed against a juvenile by a probable cause hearing. The minimum quantum of evidence required to find probable cause is that by which "the judge 'should view the proceeding as if it were a trial, and should find probable cause only if the Commonwealth has presented sufficient evidence to send the case to a jury.' " *Commonwealth* v. *Matthews*, 406 Mass. 380, 388 (1990), quoting *Commonwealth* v. *Ortiz*, 393 Mass. 523, 534 n.13 (1984). In contrast, the minimum quantum of evidence required to present to the grand jury for indictment is sufficient evidence to establish the identity of the accused and probable cause to arrest him. *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450-451 (1984). "[A] requirement of sufficient evidence to establish the identity of the accused and probable cause to arrest him is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." *Id.* at 451.

Thus, the amendment eases the burden on the Commonwealth because the level of proof necessary for obtaining a grand jury indictment is less than that required at a probable cause hearing. Therefore "the two critical elements necessary in an ex post facto law are met, its application being both retrospective and more burdensome to the defendant." *Commonwealth* v. *Kelley*, 411 Mass. 212, 215 (1991).

The Commonwealth argues that the United States Supreme Court narrowed the application of ex post facto principles in *Collins* v. *Youngblood*, 497 U.S. 37 (1990).[6] In that case, the Supreme Court retreated from prior decisions which had included, within the concept of ex post facto laws, statutory changes which altered the situation of a defendant to his disadvantage. As a result, that Court has limited the application of the Federal ex post facto prohibition to the original *Calder* categories. *Calder* v. *Bull*, *supra.* The Court

---

[6]There the Supreme Court decided that the application of a Texas statute, which was passed after the respondent's crime and which allowed the reformation of an improper jury verdict in the respondent's case, did not violate the ex post facto clause of art. I, § 10, of the United States Constitution.

stated that "the constitutional prohibition is addressed to laws, 'whatever their form,' which make innocent acts criminal, alter the nature of the offense, or increase the punishment. . . . But the prohibition which may not be evaded is the one defined by the *Calder* categories." *Collins* v. *Youngblood, supra* at 46. Included among the *Calder* categories is: "4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender"* (emphasis in original). *Calder* v. *Bull,* 3 U.S. (3 Dall.) 386, 390 (1798).

Since the legislative change gives the Commonwealth an option that reduces its evidentiary burden, it falls within the *Calder* proscription if that reduced evidentiary burden also can be said to be used to convict the offender.[7] If the Commonwealth lacked sufficient evidence to support a probable cause finding, in the absence of the option afforded by the amendment, the indictments would be dismissed. With the ability to seek indictments in such a situation the Commonwealth has the possibility of keeping the case alive in the hope that, by the time of trial, the evidence would be sufficient to obtain convictions. It would appear to us that such a fundamental change in procedure would continue to fail under Federal ex post facto scrutiny. Notwithstanding any Federal determination, however, we have no hesitancy in concluding that the ex post facto provisions of art. 24 of the Declaration of Rights of the Massachusetts Constitution prohibit the application of so fundamental a statutory change to this juvenile.

The foregoing also disposes of the Commonwealth's argument that the probable cause portion of the juvenile transfer hearing is not a substantive right because the new direct indictment provision is only a procedural change which may be

---

[7]The Commonwealth attempts to argue that a transfer hearing is only the method by which a juvenile comes into the adult criminal justice system, and does not reduce the burden of proof necessary to convict. This argument ignores the fact that, prior to the amendment at issue, if no probable cause was found, no conviction would be possible.

retroactively applied and that the Legislature may properly effect changes in the mechanics and availability of this portion of the transfer proceedings.

Furthermore, as the judge ruled, the juvenile "did have a substantive right to the Probable Cause [Part A] hearing," that "[o]n December 27, 1991, the Commonwealth in this case in Juvenile Court had no alternatives from which to elect, and [the juvenile] had the absolute right to require that the Commonwealth proceed against him first with a probable cause hearing," and that the "defendant [ ] had an absolute right on December 27, 1991, the date of the alleged offense, to a determination of probable cause, as measured by a 'directed verdict' standard, after an evidentiary hearing before a judge. On the date of the alleged offense, there was no other method that the Commonwealth was authorized to 'elect'. It was *required* to go forward with a probable cause hearing" (emphasis in original).

The order dismissing the indictment is affirmed. The case is remanded to the Juvenile Court for the resolution of the charges against the juvenile pending there.

*So ordered.*