## COMMONWEALTH *vs.* EZEKIEL HOGAN.

Suffolk. December 9, 1997. - January 12, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Delinquent Child. Practice, Criminal,* Juvenile delinquency proceeding, Transfer hearing, Admissions and confessions, Assistance of counsel, Argument by prosecutor, Instructions to jury, Duplicative convictions, Capital case. *Evidence,* Juvenile delinquency, Credibility of witness. *Judge. Constitutional Law,* Admissions and confessions, Fair trial. *Witness,* Credibility. *Joint Enterprise. Felony-Murder Rule. Homicide.*

The record of a juvenile transfer hearing demonstrated that the Commonwealth carried its burden of proving by the then applicable standard under G. L. c. 119, § 61, of clear and convincing evidence that the juvenile was not amenable to rehabilitation within the juvenile justice system. [427-429]

A criminal defendant did not demonstrate that the judge who transferred his juvenile case for trial as an adult under G. L. c. 119, § 61, was actually biased against the defendant or lacked impartiality in making his determination. [429-430]

At the trial of a murder indictment, the judge was warranted in finding that the juvenile defendant's postarrest statement to police was made intelligently, knowingly, and voluntarily after consultation with an interested adult. [430-431]

At the trial of a murder indictment, the prosecutor's closing argument was based on proper inferences from the evidence. [431-432]

At a murder trial, remarks of the judge to defense counsel out of the presence of the jury, and to the defendant in the presence of the jury in order to maintain decorum, and the judge's interruption of defense counsel's closing remarks, to direct him to refrain from excessive discussion of reasonable doubt, did not prejudice the defendant or result in an unfair trial. [432-433]

At a murder trial, the instructions given by the judge to the jury regarding accomplice testimony and credibility of witnesses were sufficient, and there was no error in the judge's failure to give more specific instructions. [433]

In the circumstances of a murder case in which the defendant claimed to have withdrawn from the joint venture before the murder was committed, the judge's instructions on joint venture, felony-murder (with rape and attempted armed robbery as the underlying felonies), and withdrawal adequately apprised the jury of the defendant's claim. [433-435]

At a murder trial, the judge's instructions to the jury on extreme atrocity or cruelty were correct. [435]

Where, in a first degree murder case, the jury returned a verdict specifying

that the defendant's conviction of murder was based on a theory of extreme atrocity or cruelty in addition to felony murder, the defendant's conviction of and sentences for the underlying felonies, armed robbery and aggravated rape, were not duplicative. [435]

No reason appeared on the record of a trial for murder in the first degree for this court to exercise its power under G. L. c. 278, § 33E, to order a new trial or to reduce the verdict. [435]

INDICTMENTS found and returned in the Superior Court Department on October 3, 1991, following a transfer hearing in the juvenile session of the Dorchester Division of the District Court Department before *Gerald Alch,* J.

Pretrial motions to dismiss and to suppress evidence were heard by *Robert A. Mulligan,* J., and the cases were tried before him.

The case was submitted on briefs.

*David Duncan, David Weingarten & John D. Fitzpatrick* for the defendant.

*Ezekiel Hogan,* pro se.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury convicted the defendant, Ezekiel Hogan, of murder in the first degree on the grounds of extreme atrocity or cruelty and felony-murder (with armed robbery and aggravated rape as the predicate felonies), and of armed robbery and aggravated rape.[1] The defendant claims error in (1) the denial of his motions to dismiss the indictments returned after he was transferred from the juvenile session of the Dorchester Division of the District Court Department to the Superior Court to be tried as an adult; (2) the denial of his motion to suppress his postarrest statement to the police; (3) remarks made by the prosecutor during his closing argument; (4) the trial judge's comments to the defendant during trial and to his defense counsel during closing argument; (5) certain jury instructions; and (6) his convictions of and sentences for armed robbery and aggravated rape that were imposed in addition to the conviction

---

[1]The defendant was sentenced to life in prison without the possibility of parole on the murder conviction, a concurrent life sentence on the armed robbery conviction, and a sentence of from fifteen to twenty years on the aggravated rape conviction to be served from and after the life sentence imposed on the murder conviction.

of and sentence for murder in the first degree.[2] We conclude that the defendant has not demonstrated error and we discern no reason to exercise our authority pursuant to G. L. c. 278, § 33E, to order a new trial or to reduce the murder conviction to a lesser degree of guilt. Accordingly, we affirm the defendant's convictions and the sentences imposed.

The facts of this case have been previously stated in *Commonwealth* v. *James*, 424 Mass. 770 (1997), where we upheld similar convictions of two other defendants who participated with the defendant in the commission of the crimes. We supplement these facts with those pertinent to the defendant that the jury would have been warranted in finding based on their consideration of the evidence at the defendant's trial. The defendant, age fifteen years at the time of the incident, and seven companions were drinking beer together on the evening of October 31, 1990. A short time later, someone suggested that they "go across the field and rob some prostitutes." The defendant agreed, and the group left the house and began walking toward Franklin Field in the Dorchester section of Boston. The eight males split into two groups to look for prostitutes. The defendant was part of the group that initially identified and chased Kimberly Rae Harbour, caught her, and carried her to a ditch in Franklin Field. The defendant helped to rip off Harbour's clothing, which the group later took away with them, and was the second male in the group to rape her. The defendant was also the second of the group to stab Harbour, and it was estimated that the defendant stabbed her ten times, stating at one point, "look how her skin cuts." The defendant also participated in assaulting Harbour during the attack, and he kicked her in the head. Harbour died from the assault, having

---

[2]Two briefs have been submitted on behalf of the defendant, the first by his original appellate counsel and the second by a subsequent appellate counsel who accepted the representation of the defendant after original appellate counsel was allowed to withdraw. The issues enumerated above (and other issues incidental thereto) were the product of both appellate briefs. The appellate attorney who filed the second brief for the defendant has also been allowed to withdraw from the case. A third appellate attorney appointed to represent the defendant has been allowed to withdraw and a request by the defendant for the appointment of a fourth appellate lawyer has been denied. The two briefs for the defendant that we are considering are competently prepared and present reasoned arguments in support of his appeal in the face of a very substantial case against him. The defendant has also filed a pro se brief raising other issues which we shall deal with in the course of this opinion.

suffered 132 stab wounds, at least eighteen blunt-force injuries, and extensive bleeding.

1. The defendant filed two motions to dismiss the indictments, one claiming that he was improperly transferred to the Superior Court for trial as an adult under G. L. c. 119, § 61 (as appearing in St. 1975, c. 840, § 1), and the other claiming lack of impartiality on the part of the transfer judge. The trial judge denied both motions, concluding (a) that the transfer judge had properly concluded that the Commonwealth had proved by clear and convincing evidence that the defendant was not a proper subject for retention in the juvenile justice system because he was not amenable to rehabilitation within that system (the only contested issue)[3]; and (b) that the defendant had failed to show that the transfer judge was not impartial. We discern no error in the denial of the defendant's motions.

(a) The version of G. L. c. 119, § 61, applicable to the defendant's case required that, as a condition of transfer, the Commonwealth prove "by clear and convincing evidence that the juvenile presents a significant danger to the public as demonstrated by the nature of the offense charged and the juvenile's past record of delinquent behavior, if any, and that the juvenile is not amenable to rehabilitation." *Commonwealth v. Kelley*, 411 Mass. 212, 213 n.2 (1991). The defendant argues that the decision to transfer him was in error because it was based on the transfer judge's rejection of the testimony of his expert witness (a licensed clinical psychologist) rather than on evidence presented by the Commonwealth.[4] We disagree. The record establishes that the transfer judge placed the appropriate burden on the Commonwealth and carefully considered all relevant factors enumerated in the applicable transfer statute in deciding that the defendant should be transferred to the Superior Court to be tried as an adult.

---

[3]General Laws c. 119, § 61, was repealed by St. 1996, c. 200, § 7, effective October 1, 1996. "[T]he statute now provides that any person between the ages of fourteen and seventeen years who is charged with committing murder in the first or second degree shall be treated in accordance with the usual course and manner of criminal proceedings." *Commonwealth v. O'Brien*, 423 Mass. 841, 842 n.2 (1996).

[4]The defendant does not contest the transfer judge's finding of probable cause under Part A of the transfer hearing or the finding under Part B that he presented a significant danger to the public. The defendant's sole argument is that the Commonwealth did not prove, by clear and convincing evidence, that he was not amenable to rehabilitation in the juvenile justice system.

The transfer judge's comprehensive written findings indicate that he did not base his decision that the defendant was not amenable to rehabilitation solely on his rejection of the testimony of the defendant's expert witness, which the transfer judge found to be equivocal and expressive of an " 'expectation' that the [defendant would] respond to treatment." See *Commonwealth* v. *O'Brien*, 423 Mass. 841, 846 (1996) (amenability to treatment of a juvenile accused of a serious crime "is not the same as [that juvenile's ultimate] rehabilitation"). See also *Commonwealth* v. *Harold H.*, 43 Mass. App. Ct. 320, 323 (1997). The transfer judge properly considered, and gave weight to, the seriousness of the charges against the defendant; his considerable history of aggressive and recalcitrant behavior when he was in school and under the supervision of the Department of Youth Services (DYS)[5]; adjudicatory proceedings against the defendant on charges unrelated to the crimes at issue[6]; his continued pattern of assaultive behavior, even while in secure detention at DYS; the lack of evidence to indicate that the defendant suffered from any mental disease or defect that would provide a basis for treatment from which he might benefit; and the fact that the defendant could only be kept in the juvenile justice system until he reached the age of eighteen, a period of less than two years.[7] These factors were relevant to the issue in dispute and established by clear and convincing evidence, as the transfer judge concluded, that the

[5]This behavior included assaults, fighting, intimidation of others (including his teachers), providing contraband to another detainee, displaying a negative attitude, declining treatment for an alcohol problem, and challenging authority. In his pro se brief, the defendant attempts to lessen the impact of this seriously deficient behavioral pattern by arguing mitigating circumstances surrounding each incident and by emphasizing positive factors in his life. To the extent that some of the information now referred to by the defendant may have been before the transfer judge, it does not weaken in any respect the finding that the defendant was not amenable to rehabilitation in the juvenile justice system.

[6]The defendant was also adjudicated delinquent for larceny of a motor vehicle and malicious destruction of property, two separate incidents that occurred subsequent to the murder of Kimberly Rae Harbour.

[7]The Commonwealth's evidence was presented by the following witnesses: the defendant's former special education teacher who had been assaulted by him; the teacher in charge of discipline at the defendant's school; the regional director of the Department of Youth Services (DYS) in Boston; the defendant's clinician while at DYS in the Westborough security detention unit; and a licensed clinical psychologist.

defendant was not amenable to rehabilitation within the juvenile justice system.

(b) The defendant claims that his motion to dismiss for lack of impartiality on the part of the transfer judge should have been allowed because that judge improperly participated in an arrangement whereby another juvenile defendant, whom we shall call Michael W., agreed to testify for the prosecution in exchange for his retention in the juvenile justice system.

The defendant's assertions are based on an affidavit by the attorney for Michael W. and affidavits by the attorneys for two other juvenile defendants. The latter two affidavits essentially reiterate information in the affidavit of Michael W.'s attorney that the attorneys submitting them considered relevant. The affidavits were filed in connection with similar motions to dismiss filed by two other juvenile defendants. The affidavits state that unrecorded conversations took place between the transfer judge, the attorney for Michael W., and the prosecutor, concerning the merits of the Commonwealth's case against the juvenile defendants and the arrangement for Michael W. to become a Commonwealth witness.[8] The defendant argues that the judge's alleged involvement in the discussion concerning Michael W., while he was considering the decision to transfer the defendant, creates an appearance of bias in favor of the Commonwealth which undermined the transfer decision.

In response to the defendant's claim, the trial judge noted that the same assertion, which had been raised by another juvenile defendant, had been denied in the trial judge's written memorandum which upheld the decision to transfer that defendant. The trial judge observed that the assertion had not been "too vigorously prosecuted on behalf of [Hogan]," and orally denied the motion to dismiss without an evidentiary hearing. In his earlier decision on this issue, the trial judge determined that the comments attributed to the transfer judge during the discussion of Michael W.'s case amounted to nothing more than an indication of that judge's view of the strength of

---

[8]The affidavits allege that the transfer judge initiated the possibility that Michael W. might enter a guilty plea to armed robbery; met with Michael W.'s attorney and the prosecutor to discuss Michael W.'s case, and, in the course of the discussion, according to the affidavits, told Michael W.'s attorney "that the 'viciousness of the crime alone was enough to transfer [Michael W.],' that the kids were gone under the felony murder rule, and that he [the transfer judge] did not see how 'these people' could get around the felony murder rule."

the Commonwealth's case. The trial judge concluded that "an informally stated preliminary inclination to counsel [about the strength of the Commonwealth's evidence and the likelihood that the juvenile defendants would be convicted], does not constitute a failure by the judge to follow the prescribed procedure [to transfer]."

There is nothing in any of the affidavits which demonstrates any actual bias against the defendant on the part of the transfer judge or a lack of impartiality. On the present record, there is no need to order a factual resolution of the allegations that the transfer judge may have become overinvolved, and may have spoken indiscreetly, during the discussion of Michael W.'s case. See, however, *Commonwealth* v. *Gordon*, 410 Mass. 498, 501 n.3 (1991) ("We take this opportunity to remind judges that they are not to participate as active negotiators in plea bargaining discussions"). We point out that "[t]he fact . . . that a judge [may] overstep[] the line does. not mean that a judgment after trial must be vacated for presumptive bias on the part of the judge." *Commonwealth* v. *Ford*, 35 Mass. App. Ct. 752, 757 (1994). We reject the suggestion that the decision to retain Michael W. in the juvenile justice system had an adverse effect on the transfer judge's decision to send the defendant's case to the Superior Court where he would be tried as an adult. As has been discussed, the transfer decision is independently grounded on the substantial evidence credited by the transfer judge, and incorporated into his findings, that warranted the conclusion that the defendant was not amenable to rehabilitation within the juvenile justice system.

2. The defendant claims error in the denial of his motion to suppress his recorded postarrest statement. Because the defendant was over fourteen years of age when he made the statement, the Commonwealth "must show that, before the disputed statement was obtained, [the defendant] was advised of [his] constitutional rights through a reading of the Miranda warnings and was afforded the opportunity to consult with an interested adult who was informed of, and understood, those rights." *Commonwealth* v. *Berry*, 410 Mass. 31, 35 (1991). The defendant was furnished his Miranda rights three times prior to questioning and he indicated each time that he understood those rights. Because the defendant's mother was out of town at the time and his father was incarcerated in Alabama, his grandmother was brought to the police station and allowed to consult

with him in private. The defendant's grandmother indicated that she also understood the Miranda rights and why she was at the police station. The defendant's contention that his mother was due back from her trip soon did not require the police to wait nor preclude his grandmother from serving as the interested adult.

The defendant also claims that the police interfered with his right to counsel by delaying his arraignment, denying him access to a telephone so that he could exercise his right under G. L. c. 276, § 33A, see *Commonwealth* v. *Caze, ante* 309, 311 (1997), and holding him for interrogation on the morning of his arrest.[9] The record shows that much of the delay was due to difficulties in locating an interested adult who was able to come to the police station to assist the defendant. The defendant signed the booking sheet approximately one hour after his arrest, acknowledging that he had been informed of his Miranda rights and his right to use the telephone, and there was no evidence that the defendant was prevented from using the telephone. The defendant was repeatedly informed of his right to counsel prior to making his statement, but the defendant never requested an attorney. Finally, there was no evidence that the police knew that counsel may have been arranged for the defendant during the time that he was giving his statement. The judge was warranted in finding that the defendant's postarrest statement to the police was made intelligently, knowingly, and voluntarily after consultation with an interested adult.[10]

3. The defendant claims error in the prosecutor's closing

---

[9]In his pro se brief, the defendant also argues for the first time that the arresting officer violated Mass. R. Crim. P. 7(a)(1), as amended, 397 Mass. 1226 (1986), by failing to notify the probation office of his arrest. See also G. L. c. 119, § 67. We reject this assertion in light of testimony by the first assistant clerk magistrate of the Dorchester District Court that he was contacted by the probation office prior to 8 A.M. on the morning of the arrests and was informed that eight persons were in custody for murder. It was at this point that the assistant clerk magistrate called the Committee for Public Counsel Services to arrange counsel for the eight suspects, one of whom was the defendant.

[10]The defendant also argues that his postarrest statement and the items seized from his home should be suppressed because the search warrants failed to establish probable cause and the information in the affidavit supporting the search warrant was stale. We do not agree that the omission of the defendant's apartment number from the affidavit, when the search warrant specified the correct apartment number, rendered the search warrant constitutionally defective. Furthermore, the staleness issue has previously been decided adversely to the defendant. *Commonwealth* v. *James*, 424 Mass. 770, 779 (1997) ("In this

argument, asserting that the prosecutor argued facts not supported by the evidence at the trial when he remarked that the victim had been stabbed five times before her clothes were removed. No objection was made to the argument. The evidence included a shirt found at the scene containing five cuts with blood around the cuts. Defense counsel did not object to the admission of this evidence.[11] An expert witness for the Commonwealth testified that the cuts had been made while the shirt was being worn. The prosecutor's suggestion that the killing of Harbour had begun before her clothes were removed and she was raped was a proper inference from the evidence.

4. We reject the defendant's argument that certain remarks made by the judge and the limitation of defense counsel's closing argument resulted in an unfair trial. The instruction to defense counsel that he should confine his opening statement to the evidence to be presented at trial was made out of the presence of the jury and was within the discretion of the trial judge. *Commonwealth* v. *Trung Chi Truong*, 34 Mass. App. Ct. 668, 671 (1993). The judge's repeated admonishment to the defendant to "be quiet," when the defendant was talking during a key witness's testimony, was appropriate and necessary to maintain decorum.

The judge also acted within his discretion in interrupting defense counsel's closing argument to direct counsel to refrain from discussing at length counsel's view of reasonable doubt. A trial judge has the responsibility of instructing the jury on the law and has considerable latitude to restrict excessive or improper closing argument by counsel. *Commonwealth* v. *Liebman*, 379 Mass. 671, 678 (1980). In this instance, defense counsel was allowed to continue with a fairly comprehensive discussion of reasonable doubt, including advice to the jury that the Commonwealth had the burden of furnishing "proof that leaves you with an abiding conviction of [guilt to a] moral certainty."

The remainder of the judge's remarks complained of by the defendant were in keeping with the judge's role of controlling

case the passage of eighteen days before the issuance of the search warrant was not unreasonable"). The trial judge was warranted in denying the defendant's motion to suppress on these grounds.

[11]The failure to object does not indicate that defense counsel was not diligent, as the defendant suggests in his pro se brief, because the evidence was properly admitted.

the conduct of the trial and were not improperly critical of defense counsel. The judge's remarks could not have caused prejudice to the defendant, especially in light of his instruction to the jury that any statements he may have made to the lawyers, or during the course of the trial, "should not be interpreted by any of you as an expression of my opinion on any fact issue in the case." See *Commonwealth* v. *Keniston*, 423 Mass. 304, 310-311 (1996); *Commonwealth* v. *Trung Chi Truong*, *supra* at 670-671.

5. We next address the alleged improprieties in the jury instructions.

(a) The defendant argues that the trial judge committed error in refusing to instruct the jury to use special care in evaluating the testimony of Michael W., who had agreed to testify in exchange for remaining in the juvenile justice system. We have previously dealt with this issue in *Commonwealth* v. *James*, 424 Mass. 770, 785-786 (1997), and concluded that the instructions given by the judge concerning the credibility of witnesses were sufficient. As in the *James* case, Michael W. had already been tried, found delinquent, and was no longer subject to any promises, rewards, or inducements by the Commonwealth at the time of his testimony. Defense counsel conducted extensive cross-examination aimed at discrediting Michael W.'s testimony and devoted much of his closing argument to this same purpose. Finally, as Michael W. was the only accomplice to testify at the defendant's trial, there could be no doubt in the minds of the jury as to whom the judge was referring when he told them to "carefully scrutinize any accomplice testimony." The trial judge did not err in failing to give more specific jury instructions regarding accomplice testimony.

(b) In his statement to the police, which was introduced in evidence by the prosecution at trial, the defendant admitted that he "had sex" with Harbour, but claimed that he ran away after the rape and never saw anyone stab her. Based on this evidence, the trial judge agreed to give a withdrawal instruction to the jury and instructed as noted below.[12] Defense counsel objected to the instruction, arguing that it incorrectly suggested to the

---

[12]The trial judge's initial instructions on withdrawal were as follows: "As to a person's withdrawal from or abandonment of a joint venture so as to avoid guilt for a subsequent crime, there must be at least an appreciable interval between the alleged withdrawal and the commission of the crime, be it aggravated rape, armed robbery, stabbing, or murder; that is, it must be a

jury that, insofar as the murder charge was concerned, the defendant's withdrawal could only be effective if it had occurred before any crime had been committed. This argument is renewed on appeal, where it is contended that the instruction, in effect, negated the defendant's claim of withdrawal by allowing the jury to convict him based on his participation in the rape despite his assertion that he had withdrawn from the joint venture when he sensed "murder in the air."

In the case of multiple crimes committed by joint venturers and the issue of withdrawal, an instruction about withdrawal should point out, when the evidence warrants, that a defendant can be found guilty as a joint venturer of an initial crime but then can effectively withdraw so as to avoid culpability for a subsequent crime. The withdrawal issue was properly presented to the jury in this case. In addition to the withdrawal instruction, which essentially paralleled the instruction held appropriate in *Commonwealth* v. *Fickett*, 403 Mass. 194, 201 (1988), the jury were correctly instructed on the law of joint venture and felony-murder. In that regard, they were told that they could convict the defendant of first degree felony-murder only if the Commonwealth proved, beyond a reasonable doubt, that the defendant actively and intentionally participated in the commission, or attempted commission, of an armed robbery or an aggravated rape, and that an unlawful killing occurred during the course of the commission, or attempted commission, of the armed robbery or aggravated rape.[13] The effect of the instructions considered together adequately apprised the jury of the

---

detachment from the enterprise before the armed robbery or stabbing leading to a murder has become so probable that it cannot reasonably be stayed, and there must be such notice or definite act of detachment that the other persons, the other principals in the attempted crime, also have opportunity to abandon it." The trial judge essentially repeated these instructions during deliberation in response to a jury request for clarification on joint venture and detachment from joint venture, but deleted the phrase, "be it aggravated rape, armed robbery, stabbing, or murder," and replaced the phrase, "the armed robbery or stabbing leading to a murder," with the term "the crime." The judge also emphasized that "[t]he Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not effectively abandon the joint enterprise before you may convict him of a crime under a joint venture theory."

[13]Similarly, the joint venture instruction, emphasizing as it did the necessity of active and intentional participation by the defendant in the criminal episode, had application to the jury's consideration of murder in the first degree by reason of extreme atrocity or cruelty.

defendant's claim of withdrawal, which the jury effectively rejected when they found that he had been an active participant in the entire ordeal inflicted on Harbour.[14]

(c) The defendant argues that the judge's instructions on extreme atrocity or cruelty were in error because they were not limited to a consideration of the factors specified in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983).[15] This issue was also addressed in *Commonwealth* v. *James*, *supra* at 790-791, and the resolution of the issue in that opinion applies here.

6. The defendant contends that his convictions for armed robbery and aggravated rape are duplicative of his conviction of murder in the first degree by reason of felony-murder and must be vacated. If a jury return a verdict of first degree felony-murder, or a general verdict of murder in the first degree which may have been based on felony-murder, then a separate conviction for the underlying felony cannot stand. *Commonwealth* v. *Anderson*, 425 Mass. 685, 692 (1997). But where, as in this case, the jury return a verdict specifying that the conviction for murder in the first degree was based on a theory of extreme atrocity or cruelty in addition to felony-murder, the underlying felony is considered a separate and distinct crime. *Commonwealth* v. *Raymond*, 424 Mass. 382, 396-397 (1997). Therefore, the defendant's convictions of and sentences for armed robbery and aggravated rape are to stand.

7. We have reviewed the record as required by G. L. c. 278, § 33E, and conclude that there is no reason to order a new trial or to direct the entry of a lesser degree of guilt on the murder charge. The case against the defendant was compelling, and the assault on and murder of Harbour were brutal in the extreme and committed with utter disregard for human decency and life.

*Judgments affirmed.*

---

[14]The defendant also argues that the inclusion of the phrase "to avoid guilt for a subsequent crime" in the withdrawal instruction improperly shifted the burden of proof on the issue of withdrawal to him. No objection was made to this criticized language, and we do not consider it as giving rise to any error.

[15]The defendant also claims error in the judge's inclusion of "frame of mind" and "grievous bodily harm" language when instructing the jury on malice aforethought. There was no objection to the instruction. The argument has no merit because the nature of the murder demonstrates beyond doubt the presence of malice in its commission.