## COMMONWEALTH *vs.* HOWARD LEE SAVAGE.

No. 96-P-1986.

Middlesex. February 5, 2001 - May 9, 2001.

Present: ARMSTRONG, C.J., BROWN, & GRASSO, JJ.

*Child Abuse. Evidence,* Impeachment of credibility. *Witness,* Credibility. *Practice, Criminal,* Assistance of counsel, New trial. *Constitutional Law,* Assistance of counsel.

At the trial of indictments for rape, abuse of a child under the age of sixteen, and other sexual crimes, defense counsel's decision not to introduce evidence of the victim's prior report of sexual abuse by another perpetrator did not render counsel's assistance ineffective, where there was no basis in the record to support the propositions either that an earlier report of child abuse was false (*Commonwealth* v. *Bohannon,* 376 Mass. 90 [1978]) [503], or that the victim had a precocious familiarity with sexual terminology prior to the alleged abuse by the defendant (*Commonwealth* v. *Ruffen,* 399 Mass. 811 [1987]) [503-504].

At a criminal trial, the judge did not abuse his discretion in denying, without a hearing, the defendant's motion for a new trial that asserted ineffective assistance of counsel in advising the defendant to waive a jury trial [504-506], in advising him not to testify [506], and in resting at the close of the Commonwealth's case without introducing evidence [506-507], where the defendant's factual showing was deficient and his affidavits failed to raise a substantial issue.

INDICTMENTS found and returned in the Superior Court Department on April 28, 1992.

The cases were heard by *Hiller B. Zobel,* J., and a motion for a new trial was heard by him.

*Kern W. Cleven* for the defendant.

*Mary Ross,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. Following a jury-waived trial, the defendant was

found guilty on five indictments.[1] He brings this appeal from his convictions and from the denial of his motion for a new trial. On direct appeal, he contends that trial counsel was ineffective in failing to introduce evidence of the victim's prior reports of sexual abuse with other perpetrators. He also contends that the trial judge erred in denying the motion for a new trial and in not granting an evidentiary hearing. We affirm the defendant's convictions and the denial of his motion for a new trial.

1. *Facts.* The evidence consisted primarily of the testimony of Tim,[2] who was almost fifteen years old at the time of trial. The judge could have found the following facts. In 1988, when Tim was seven years old, he lived with his mother, siblings, and his mother's boyfriend. The defendant, who was a friend of Tim's mother's boyfriend, babysat for Tim and his siblings. On one occasion, the defendant took Tim to a Red Sox game. After the game, the defendant took Tim to his apartment in Marlborough where the first in a series of sexual assaults occurred. The defendant showed Tim pornographic videotapes and engaged in sexual activity, masturbating himself and Tim.

In March of 1989, Tim turned eight years old. He moved into the defendant's home where he continued to live with the defendant and his wife for approximately one year. During that time, the defendant frequently sought opportunities to be alone with Tim, when he would reprise the familiar formula of pornographic videos and sexual activity. The sexual activity escalated to oral sex: the defendant forced Tim to perform oral sex on him, holding Tim's head in place when Tim resisted. After he ejaculated, the defendant would pull up his pants and stop the video. These assaults occurred one to three times per week during the period from March, 1989, to July, 1990.

On some of the occasions of sexual activity, the defendant

---

[1] Three indictments alleged rape and abuse of a child under the age of sixteen; assault with intent to rape a child under the age of sixteen; and disseminating harmful matter to a minor, on divers dates between March, 1989, and July, 1990. Two other indictments alleged assault with intent to rape a child under the age of sixteen; and indecent assault and battery on a child under the age of fourteen, on divers dates between July, 1990, and February, 1992.

[2] A pseudonym.

would put Vaseline on his penis and rub it onto Tim's buttocks in an attempt to penetrate Tim anally. When Tim resisted, the defendant would either keep pushing his penis against Tim's buttocks or suggest that they try it again some other time. The defendant told Tim that if he told anyone about their sexual activities, they would both be in serious trouble.

In July, 1990, for reasons not explained in the record, Tim (now age nine) left the defendant's home. For the next two years, Tim moved from foster home to foster home. Eventually, the Department of Social Services placed Tim in a residential facility. While at the facility, Tim would visit his mother in Framingham on weekends and holidays. During these visits, Tim and a neighborhood friend would occasionally walk to the defendant's home to visit. There the familiar pattern recurred: the defendant's wife and Tim's friend would leave to do errands, and the defendant would sexually molest Tim.

At some point in February, 1992, Tim (now almost eleven years old) told his mother of the sexual abuse. Tim's disclosure led to the indictments upon which the defendant was tried and convicted.

2. *Background.* After conviction and prior to sentencing, the defendant's trial counsel filed a motion to withdraw from the case, which was allowed. On April 23, 1996, represented by new counsel, the defendant filed a motion for a new trial, together with affidavits from himself and his wife. On May 9, 1996, the trial judge denied the motion for a new trial without an evidentiary hearing. This appeal followed.

3. *Direct appeal.* As a result of discovery, defense counsel had information that Tim had reported sexual abuse at the hands of a neighborhood child in 1989. The defendant complains that counsel was constitutionally ineffective because he failed to utilize this information to pursue either a *Bohannon* argument (prior false allegation of rape), *Commonwealth* v. *Bohannon,* 376 Mass. 90, 92-96 (1978), *S.C.,* 385 Mass. 733 (1982), or a *Ruffen* argument (precocious familiarity with sexual terminology prior to the alleged abuse by defendant), *Commonwealth* v. *Ruffen,* 399 Mass. 811, 815 (1987); *Commonwealth* v. *Scheffer,* 43 Mass. App. Ct. 398, 398-401 (1997), to buttress the defense theory that the victim fabricated the allegations because he was

angry and upset with the defendant for not adopting him. Nothing in the record, including various documents submitted pursuant to *Bishop*,[3] supports such a claim.

A. *The* Bohannon *issue.* The *Bohannon* exception to the general rule barring evidence of prior false allegations is narrow, being applicable only in "unusual fact situations where justice demands." *Commonwealth* v. *McDonough*, 400 Mass. 639, 650 (1987), quoting from *Commonwealth* v. *Trenholm*, 14 Mass. App. Ct. 1038, 1039 (1982). Prerequisite to a *Bohannon* admission of a prior false sexual allegation by the victim is establishment, in independent third-party records, of a basis to believe that the prior accusation was false. *Commonwealth* v. *Sperrazza*, 379 Mass. 166, 169 (1979). *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 319 (1994). There is no basis in the record to support the proposition that Tim's allegation about the neighborhood boy was false. See *ibid.* Any attempt by trial counsel to pursue such a line of inquiry would have been appropriately excluded by the trial judge. See *Commonwealth* v. *McDonough*, 400 Mass. at 651.

B. *The* Ruffen *issue.* The defendant contends that his counsel was ineffective in not pursuing other incidents of abuse, predating the defendant's contact with the victim, which could have explained the victim's precocious familiarity with particular sexual terms and acts. See *Commonwealth* v. *Ruffen*, 399 Mass. at 816; *Commonwealth* v. *Scheffer*, 43 Mass. App. Ct. at 400-401. Such evidence would have been relevant only if there were a basis for concluding that factually similar abuse had predated the allegations of abuse against the defendant and that Tim displayed knowledge of sexual matters beyond his years. See *Commonwealth* v. *Walker*, 426 Mass. 301, 306 (1997); *Commonwealth* v. *Rathburn*, 26 Mass. App. Ct. 699, 707-708 (1988). Although Tim had been the victim of one isolated oral sexual act perpetrated by a neighborhood boy in 1989, there was no similarity of detail to the repeated sexual assaults by the defendant in 1989-1990 and 1991-1992. Moreover, Tim's testimony was neither inconsistent nor confused. His descrip-

[3]See *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-183 (1993) (establishing a protocol for dealing with confidential and privileged records). See also *Commonwealth* v. *Fuller*, 423 Mass. 216, 223-227 (1996).

tions of the sexual assaults were replete with specific details of a nonsexual nature, including the location where the abuse occurred, the furniture arrangement, the defendant's creation of the opportunity, and the defendant's statements. Such details tended to demonstrate that he was not drawing upon previous incidents. See *Commonwealth* v. *Rathburn*, 26 Mass. App. Ct. at 708.

None of the language Tim used to describe the defendant's abuse reflected precocious sexual sophistication for a child of his age. *Ibid.* See *Commonwealth* v. *Walker*, 426 Mass. at 306. He used plain, ordinary terms like "rubbing," "suck," "penis," "white stuff," and "tush" to describe the sexual acts. These terms hardly constitute a "prodigy of sexual arcana." *Commonwealth* v. *Pyne*, 35 Mass. App. Ct. 36, 37 (1993).

Notwithstanding the fact that he lacked the basis to inquire, defense counsel nonetheless brought these matters to the judge's attention in vigorous cross-examination. He inquired at length about the abuse perpetrated by the neighborhood boy; about whether Tim had been abused by a myriad of people other than the defendant, including the victim's mother, stepfather, and mother's boyfriends; about whether he had ever seen his mother having sex with any of her boyfriends; and about whether he had watched or read pornography with someone other than the defendant or by himself. We conclude that trial counsel's performance was not ineffective.

4. *Motion for new trial.* The defendant filed a motion for a new trial, asserting ineffective assistance of counsel in (1) advising him to waive jury trial; (2) advising him not to testify; and (3) failing to put on a defense. The motion judge, who was also the trial judge and who had conducted the jury waiver colloquy, denied the motion without an evidentiary hearing.

A motion for a new trial is addressed to the sound discretion of the judge, *Commonwealth* v. *Smith*, 381 Mass. 141, 142 (1980), and the judge's disposition will not be reversed unless it is manifestly unjust, *Commonwealth* v. *Schand*, 420 Mass. 783, 787 (1995), or unless the trial is infected with prejudicial constitutional error, *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981). Where the judge deciding the motion is also the

trial judge, reversal for abuse of discretion is particularly rare. See *Commonwealth* v. *Schand*, 420 Mass. at 787.

While the issues raised were serious, the defendant's factual showing was meager. See *Commonwealth* v. *Stewart*, 383 Mass. at 257-258; *Fogarty* v. *Commonwealth*, 406 Mass. 103, 110-111 (1989). As the defendant's affidavits failed to raise a substantial issue, see *Commonwealth* v. *Stewart*, 383 Mass. at 257; *Commonwealth* v. *Grace*, 397 Mass. 303, 313 (1986); *Commonwealth* v. *DeVincent*, 421 Mass. 64, 67 (1995), the judge correctly exercised his discretion and decided the motion without further hearing. See *Commonwealth* v. *Lopez*, 426 Mass. 657, 663 (1998); Mass.R.Crim.P. 30(c)(3), 378 Mass. 900 (1979).

A. *Jury waiver issue.* The defendant complained that the nature and substance of counsel's advice to waive jury trial, which was based upon counsel's alleged perception that the judge was leaning in the defendant's favor, was manifestly unreasonable.[4] The defendant's complaint was not that he did not know the rights he was giving up,[5] but that counsel's advice to waive trial by jury was unreasonable. According to the defendant's supporting affidavit, during a meeting, counsel had insisted that the judge's manner of inquiring whether the defendant wished to waive jury trial augured a favorable resolution by the judge.[6]

The judge was entitled to discount the defendant's affidavit as self-serving, conclusory, and lacking in credibility. *Commonwealth* v. *Gould*, 413 Mass. 707, 716 n.9 (1992). Special expertise or advice of counsel is not required to know that no

---

[4]The jury waiver was executed in November, 1995. Trial did not commence until March, 1996. There is nothing in the record to indicate that at the time he waived jury trial, the defendant received assurances that the judge conducting the jury waiver colloquy would also be the trial judge at a later point in time.

[5]The determination of whether a defendant's waiver of jury trial is made knowingly and voluntarily looks primarily to the evidentiary record of the jury waiver colloquy itself. *Commonwealth* v. *Pavao*, 423 Mass. 798, 802 (1996). See *Commonwealth* v. *Abreu*, 391 Mass. 777, 779 (1984). The defendant concedes that the jury waiver colloquy conducted on November 27, 1995, was adequate.

[6]Conspicuously absent was an affidavit from trial counsel supporting the defendant's contention.

one can divine the trial's outcome from the judge's mood or tone any more than from a reading of tea leaves. Such knowledge is elemental, especially for an "intelligent" and "articulate person," "holding a responsible position with a law firm" and "above average in sensitivity to" and comprehension of the legal process, as the judge observed this defendant to be. Nor would it be manifestly unreasonable for counsel to believe that an experienced judge would evaluate an alleged sexual assault upon a child more dispassionately than would a jury. To require an evidentiary hearing in these circumstances would carry the court to the extreme disavowed in *Saferian*, with judges "becom[ing] Penelopes, forever engaged in unravelling the webs they wove." *Commonwealth* v. *Saferian*, 366 Mass. 89, 99 (1974), quoting from Hand, J., in *Jorgensen* v. *York Ice Mach. Corp.*, 160 F.2d 432, 435 (2d Cir.), cert. denied, 332 U.S. 764 (1947).

B. *Decision not to testify.* The supporting affidavit of the defendant's wife asserted that she and the defendant were dissuaded from testifying by trial counsel, who told them that the judge was giving him "indications" that the case was "open and shut." The defendant's affidavit added that counsel and counsel's wife (a psychotherapist with extensive criminal trial experience who had attended the trial to "read" the judge and the witnesses and to find weaknesses in their testimony) had "ganged up" on him not to testify.

The decision not to testify is a tactical choice. See *Commonwealth* v. *Hennessey*, 23 Mass. App. Ct. 384, 388 (1987). The judge need not have blinked the fact that the defendant's wife's affidavit possessed many of the same self-serving, conclusory, and impressionistic characteristics as the defendant's. The judge found that by testifying, the defendant would have risked exposure on cross-examination. He did not abuse his discretion.

C. *Failure to put on a defense.* The defendant's final contention was that counsel was ineffective in resting at the close of the Commonwealth's case without introducing evidence. The defendant's wife's affidavit named three individuals who, if called, purportedly would have given unspecified testimony favorable to the defendant. Conspicuously absent were affidavits

of the individuals themselves. The wife's affidavit also failed to mention the substance of the expected testimony or how it would be of significance to the defense.

From his vantage during the trial, the judge, who was in the best position, had been able to observe defense counsel mount a "very vigorous defense," arguing for exclusion of certain evidence and cross-examining the victim for two days to erode his credibility. He found that defense counsel did as well as he could be expected to do. It has not been made to appear that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

*Judgments affirmed.*