## Commonwealth *vs.* James Lucien.

Suffolk. October 10, 2003. - January 12, 2004.

Present: Marshall, C.J., Spina, Cowin, & Sosman, JJ.

*Constitutional Law,* Fair trial, Self-incrimination, Assistance of counsel. *Evidence,* Failure to produce evidence, Cross-examination, Expert opinion. *Practice, Criminal,* Disclosure of evidence, Argument by prosecutor, Instructions to jury, New trial, Assistance of counsel, Duplicative convictions, Capital case. *Felony-Murder Rule. Judge. Homicide. Robbery.*

At the trial of an indictment for murder in the first degree, no substantial likelihood of a miscarriage of justice arose from the failure of the hospital to which the victim had been taken to preserve the victim's clothing, where the Commonwealth was not culpable for the loss of the evidence. [662-663]

The judge at a criminal trial did not improperly limit the defendant's right to cross-examine a witness by participating in the questioning in a way that was not partisan in nature, or exhibit any bias either in questioning the relevance of defense counsel's line of questioning or in the judge's treatment of a prosecution witness. [663-665]

There was no error in permitting a witness to invoke his privilege of self-incrimination upon voir dire, where, although his criminal record reflected a guilty plea regarding possession of one firearm, there were two firearms involved in the relevant incident, and where evidence of the unlicensed trading of firearms would have exposed the witness to at least one criminal violation. [665]

Record support existed for a prosecutor's statement in his closing argument that the defendant at the trial of an indictment for murder in the first degree had spoken to the victim over the telephone and had argued with him before an arranged drug sale, and the prosecutor's dramatization of the imagined course of that conversation was restrained and consistent with reasonable inferences drawn from the evidence and therefore permissible. [665-666]

No basis existed for the giving of an instruction that the jury could not consider the guilty plea of a testifying accomplice as evidence against the defendant at the trial of an indictment for murder in the first degree, because the accomplice in question had not pleaded guilty as of the time he testified. [666-667]

A Superior Court judge's inflection and slower speaking pace during an instruction on reasonable doubt at the trial of an indictment for murder in the first degree did not diminish the Commonwealth's burden of proof or improperly suggest that the jury should believe the Commonwealth witnesses. [667]

At a murder trial, the judge's instruction on felony-murder was consistent with the model jury instructions, and the defendant received an instruction more favorable than he was entitled to receive, in that the judge instructed the jury that the Commonwealth was required to prove that the defendant actually killed the victim. [667-668]

A judge's misstatement in his instruction on murder in the second degree at the trial of an indictment for murder in the first degree was harmless, where a reasonable juror could not have understood that his or her duty would be to find the defendant guilty of a particular theory of murder in the first degree that had not been proved, if only murder in the second degree had been proved. [668-669]

At the trial of an indictment for murder in the first degree, a claim of ineffectiveness of counsel, which was based on the failure to call a pathologist and a ballistician who would have provided evidence that the defendant did not fire the fatal shot, did not lie, where the record indicated that there were tactical reasons, not manifestly unreasonable, why counsel might not have called the ballistician, including the ballistician's support of the testimony of the Commonwealth's pathologist. [669-671]

There was no abuse of discretion or other error in the denial of a criminal defendant's motion for a new trial based on his counsel's rendering of faulty advice about the Commonwealth's ability to impeach him, where the judge could have construed an affidavit submitted by trial counsel as indicating that the motion for a new trial was without merit as to the impeachment issue, in that counsel did concede some fault regarding the failure to call certain expert witnesses; likewise, the judge was entitled to reject summarily any claim supported only by the defendant's self-serving affidavits and draw inferences from his own observation of the defendant and counsel at trial concerning discussion of the matter the defendant claimed was never discussed. [671-672]

Because a criminal defendant's direct appeal was pending from convictions of various charges, and because the defendant's original motion for a new trial had been decided and an appeal had been taken therefrom, a Superior Court judge properly declined to consider, based on a lack of jurisdiction, the defendant's amended motion for a new trial, which contained two new claims. [672-673]

A defendant's conviction of both armed robbery and murder in the first degree based on a theory of felony-murder was duplicative, where armed robbery was the underlying felony supporting that conviction. [673]

INDICTMENTS found and returned in the Superior Court Department on November 14, 1994.

The cases were tried before *Thomas E. Connolly*, J., and a motion for a new trial was heard by him.

*Stephen Neyman* for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendant was convicted of murder in the first

degree on a theory of felony-murder, two counts of armed robbery, and illegal possession of a firearm. He filed a motion for a new trial, which was later revised, and denied. His appeal from the denial of his motion for a new trial has been consolidated with his direct appeal. Also before us is the trial judge's refusal to consider the defendant's amended motion for a new trial.

On appeal, the defendant claims that he is entitled to a new trial because (1) the Commonwealth lost the victim's clothing; (2) the judge improperly interfered with the cross-examination of a Commonwealth witness; (3) the judge improperly accepted a witness's invocation of the privilege against self-incrimination; (4) the prosecutor's closing argument was based on speculation and facts not in evidence; and (5) the judge committed error in various instructions. He also alleges error in (6) the denial of his motion for a new trial, which alleged ineffective assistance of counsel; (7) the judge's refusal to consider his amended motion for a new trial; and (8) the imposition of a duplicative sentence. Finally, he asks us to exercise our power under G. L. c. 278, § 33E, to reverse his murder conviction. Except for one conviction of armed robbery, which also served as the predicate felony for the murder conviction, we affirm the convictions and decline to exercise our power under § 33E to reduce the degree of guilt or grant a new trial.

1. *Background.* On June 25, 1994, the defendant and Jamal Butler agreed to rob an unspecified drug dealer later that day. The defendant brought a friend with him to the designated meeting place. The three men went to the home of Butler's girl friend, where Butler paged the victim, Ryan Edwards, whom he knew, and knew to be a cocaine dealer. Edwards's brother, Alfred Clarke, answered the page and passed the telephone to Edwards. The defendant tried to arrange to buy some cocaine, but Edwards refused to deal because he did not know the defendant. Following a brief argument, the defendant hung up. Butler paged the victim a second time and spoke with Clarke, who knew him. Butler arranged for the defendant to buy one ounce of cocaine from Edwards for $850 at the McDonald's restaurant on Warren Street in the Roxbury section of Boston, where the parties agreed to meet within one-half hour.

At the McDonald's parking lot, Butler entered Edwards's car and sat in the back seat. Edwards was in the driver's seat and Clarke sat in the front passenger seat. Edwards showed Butler the cocaine and Butler said that he was "going to get my man," meaning the defendant, who was to deliver the money. Butler returned to the defendant's car and told him to "go handle his business." The defendant went over to Edwards's car and sat in the rear seat. Edwards drove out of the parking lot onto Warren Street because he was concerned about being seen by security personnel. The defendant pulled out a gun and said, "Keep driving or I'll kill both of you." He ordered Clarke to turn over his cash, pager, and the bracelet he was wearing. He then ordered Clarke to get out of the car. Edwards pulled over and Clarke got out. As the car drove off, Clarke heard a gunshot and saw a flash inside the car. He waved down a police cruiser and told the officers, "They shot my brother."

At some point the defendant got out of Edwards's car. Edwards eventually stopped his car in a parking area on Albert Street, approximately five blocks from the McDonald's restaurant, and "revv[ed]" the engine. An off-duty Boston police officer who was visiting a nearby home heard two gunshots and saw Edwards's car pull into the parking area. He went outside to investigate. Edwards told him that he had been shot. The officer telephoned 911. Edwards told the responding officer that he had been shot by someone outside the car. Edwards was taken to Boston City Hospital, where he died a short time later. An autopsy revealed that a single bullet entered Edwards's body about six inches below his right armpit, traveling nearly straight across his torso, slightly downward, through his diaphragm, liver, aorta, and left kidney, causing death. Because Edwards's clothing had been lost by hospital personnel, it could not be determined whether he had been shot at close range.

The next day the defendant gave Butler one-half the cocaine he took from Edwards. He also admitted that he shot Edwards. When Butler asked why, the defendant said that he wanted "to make it look good." A shell casing found on the front passenger seat of Edwards's car had been discharged from a .25 caliber automatic weapon. The bullet recovered from Edwards's body was consistent with a .25 caliber bullet. The murder weapon was never found.

The defense seized on Edwards's words to the effect that he had been shot by someone outside the car; the testimony of the off-duty officer who heard two shots fired; and the fact that Edwards's clothing had been lost and could not be analyzed for the presence of gun powder residue to determine whether Edwards had been shot at close range. The defense also tried to depict Butler and Clarke as unworthy of belief, based on their involvement with drugs, their criminal records, prior inconsistent statements, and possible motives to lie. Defense counsel also implied that Clarke might have killed Edwards with a .25 caliber handgun he owned.

2. *Lost evidence.* The defendant argues that he is entitled to a reversal of his murder conviction and a dismissal of the indictment because the Commonwealth failed to preserve Edwards's clothing, thereby depriving him of a fair trial and the opportunity to present evidence favorable to his cause. The defendant raises the issue for the first time on appeal, so we consider whether any error caused a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Cintron,* 438 Mass. 779, 783-784 n.2 (2003).

Detective John Brazil had gone to the emergency room at Boston City Hospital shortly after the shooting to recover Edwards's clothing, but the clothing was nowhere to be found. Because the clothing was never in the possession of the prosecutor or the police, there was no breach of duty for which the Commonwealth may be held responsible. See *Commonwealth* v. *Donahue,* 396 Mass. 590, 596 (1986), quoting *Commonwealth* v. *Liebman,* 379 Mass. 671, 675 (1980). There has been no showing that medical personnel at Boston City Hospital were members of the prosecutor's staff or had "participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office." *Commonwealth* v. *Woodward,* 427 Mass. 659, 679 (1998), quoting *Commonwealth* v. *St. Germain,* 381 Mass. 256, 261-262 n.8 (1980). Where the evidence shows only that Detective Brazil attempted to secure the clothing but was unable to obtain it for reasons not attributable to him, the Commonwealth is not culpable for the loss and should not be sanctioned. Contrast *Commonwealth* v. *Donahue, supra* at 599-602. The

loss of the evidence did not prevent the defendant from arguing that Edwards had been shot from outside the car, but instead allowed him to make the argument.

3. *Interference with cross-examination.* The defendant contends that the judge improperly interfered with his right to cross-examine a Commonwealth witness, Judith Richards, in violation of his rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. There was no objection, and the defendant acknowledges that the standard of review is whether any error created a substantial likelihood of a miscarriage of justice.

Richards, the sister of Clarke and Edwards, had testified that approximately one month after Edwards was killed, she discovered a gun in the attic, activated the safety, placed the gun in a lunch box, and then threw the lunch box in the trash. The Commonwealth had offered this testimony to explain what happened to the .25 caliber handgun Clarke said he acquired after Edwards was killed. On cross-examination, Richards was asked what kind of gun she threw out, and answered that she could not remember. Defense counsel held up a .38 caliber semiautomatic handgun and a .25 caliber automatic handgun and asked which gun more closely resembled the one she threw out. The judge interrupted and said, "We don't want you to guess, though. If you don't have a memory, just tell us, please." Richards answered that she did not remember.

The judge did not improperly limit the defendant's right to cross-examine the witness, and he did not guide the witness's testimony or put words in her mouth, as the defendant argues. The right to cross-examine is not absolute, but is subject to the judge's broad discretion. See *Commonwealth* v. *Jordan,* 439 Mass. 47, 55 (2003) (cross-examination calling for speculation properly excluded). The witness said she could not remember what type of gun it was. Defense counsel's next question was improper for two reasons: it assumed a fact (that the witness had a memory of the type of gun she discarded) not in evidence, see *Reardon* v. *Boston Elev. Ry.,* 311 Mass. 228, 231 (1942), and it was confusing because it asked the witness to testify

about something for which she said she had no memory.[1] The judge properly allowed Richards to answer after satisfying himself that she understood that her responsibility was to answer based on her memory, and not on speculation. Cf. *Commonwealth* v. *Hoffer*, 375 Mass. 369, 376 (1978); *Commonwealth* v. *Walker*, 42 Mass. App. Ct. 14, 19 (1997) (judge, in refusing to permit defense counsel to show social worker's report to nine year old witness, could reasonably conclude that witness would not likely understand that document was only being used to refresh her recollection). A judge may properly participate in the questioning of a witness so long as the questioning is not partisan in nature. See *Commonwealth* v. *Festa*, 369 Mass. 419, 422 (1976), and cases cited. There was no error.

The defendant also contends that the judge improperly "rescued" the Commonwealth when he questioned the relevance of defense counsel's effort to ascertain the identity of the person who had shown Richards how to activate the safety of a handgun and excluded evidence of that person's identity. The judge did not preclude all inquiry on the subject. See *Commonwealth* v. *Doherty*, 394 Mass. 341, 349 (1985). Richards had said that it was not a family member. Defense counsel admitted he did not know the relevance of that person's identity. The judge nevertheless permitted counsel to inquire if the person was either Clarke or Edwards, and the witness said it was neither. A judge has discretion to exclude irrelevant evidence, sua sponte, provided he does not exhibit bias in the process. See *Commonwealth* v. *Haley*, 363 Mass. 513, 516-519 (1973), *S.C.*, 413 Mass. 770 (1992). No bias was exhibited, and the judge properly acted within his discretion.

The judge's folksy send-off for Richards at the conclusion of her testimony, in which he thanked her and wished her well in college, should not have been said, but it did not create a substantial likelihood of a miscarriage of justice. The judge had treated other witnesses in a similar fashion, including defense witnesses. The absence of an objection suggests the lack of any prejudice from the judge's practice, and refutes the defendant's

---

[1] It would have been appropriate for counsel first to ask whether either gun refreshed the witness's recollection as to what type of gun she threw out.

claim on appeal that the judge was endorsing Richards's testimony. Moreover, Richards was not a key witness, and the judge told the jury in his final instruction that he was "totally neutral," and that nothing he had said or done during the trial should be construed as an indication that he had an opinion about the facts of the case. There was no substantial likelihood of a miscarriage of justice.

4. *Invocation of privilege against self-incrimination by Andrew Neals.* Clarke had testified that "a couple of days" after the murder he traded his .38 caliber handgun to Andrew Neals for a .25 caliber automatic handgun. The defendant called Neals to testify about the swap to cast doubt on the credibility of Clarke's testimony, and to explore the possibility that Clarke may have had the gun on the day of the murder. Neals invoked his privilege against self-incrimination during a voir dire. The judge accepted Neals's claim of privilege and excused him from testifying. The defendant objected, arguing that Neals had waived the privilege by pleading guilty to "a firearm offense." He also produced a copy of Neals's criminal record.

"A witness may refuse to testify unless it is ' "*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency" to incriminate' (emphasis in original)." *Commonwealth* v. *Funches*, 379 Mass. 283, 289 (1979), quoting *Hoffman* v. *United States*, 341 U.S. 479, 488 (1951). Although, as the defendant argues, the record does not show the judge's reason for accepting Neals's exercise of the privilege, the basis is plain from the record. Neals's criminal record indicates that he pleaded guilty to illegal possession of only one firearm. However, there were two firearms involved in the alleged swap. Thus, he was entitled to invoke the privilege as to possession of the second firearm. In addition, evidence of the unlicensed trading of firearms exposed Neals to a prosecution of at least one violation of G. L. c. 140, § 128. There was no error.

5. *Prosecutor's closing argument.* The defendant contends that there was no record support for certain statements made by the prosecutor in his closing, and that the prosecutor improperly speculated about the defendant's motive to shoot Edwards. We disagree.

There was record support for the prosecutor's assertion that the defendant had spoken to Edwards over the telephone and had argued with him before Butler finalized arrangements for the drug sale. Although there was no direct evidence that the defendant told Edwards he "want[ed] to deal," as the prosecutor stated, it was clear both that the prosecutor was drawing an inference, and that the purpose of the conversation was to arrange a drug sale. The prosecutor's dramatization of the imagined course of that conversation was restrained and consistent with reasonable inferences drawn from the evidence. It was permissible. See *Commonwealth* v. *Pope*, 406 Mass. 581, 587 (1990). The defendant's claim that the prosecutor improperly argued that he telephoned a second drug dealer is meritless. The prosecutor made no such statement. He argued that Butler made the telephone call.

The prosecutor posited three possible motives for the shooting, each of which was based on reasonable inferences drawn from the evidence. The prosecutor explicitly presented his theories to the jury as possible scenarios, not as fact, and he also correctly added that evidence of motive was not a necessary element of proof. The argument was not improper.

6. *Jury instructions.* a. Ciampa *instruction.* Butler testified pursuant to a written plea agreement with the Commonwealth. See *Commonwealth* v. *Ciampa*, 406 Mass. 257 (1989). The defendant contends that the judge did not instruct the jury that they could not consider Butler's guilty plea as evidence against the defendant. See *Commonwealth* v. *Prater*, 431 Mass. 86, 98 (2000) ("The better practice would have been for the judge to have provided a specific instruction that the jury should not consider an accomplice's guilty plea as evidence against [the defendant]"). There was no objection to the lack of the instruction, so we review to determine if any error caused a substantial likelihood of a miscarriage of justice.

*Commonwealth* v. *Prater, supra,* was decided after the trial of this case, and left open the question whether failure to instruct the jury that they may not consider evidence of the accomplice's guilty plea as evidence against the defendant constitutes error. *Id.* at 98. We need not decide the question here because there was no evidence that Butler had pleaded guilty. Thus, there was

no guilty plea for the jury to consider and no basis for the judge to have given the instruction in question.[2] There was no error.

b. *Judge's inflection.* The defendant objected to the inflection and the slower speaking pace used by the judge in the instruction on reasonable doubt, which the defendant argues diminished the Commonwealth's burden of proof, and in the instruction on credibility of witnesses, which he claims suggested that the Commonwealth's witnesses were credible. The judge ordered a copy of the tape recording used by the official court reporter to be included in the record on appeal, and he authenticated the recording. We have listened to the tape, and we discern nothing improper in this case about the judge's inflection, or the pace of his speech during those portions of the instructions.

We consider the judge's instructions in their entirety. See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 153 (1980), cert. denied, 451 U.S. 973 (1981), and cases cited. Although the judge did stress certain points by inflection or a slower pace, he did not suggest any diminution of the Commonwealth's burden of proof, or suggest that the jury should believe the Commonwealth witnesses. His use of inflection and a slower speaking pace stressed important concepts, some of which were favorable to the defendant. Some inflection may be desirable to maintain interest and to avoid the obvious negative effects that might flow from speaking in a monotone. The judge's delivery was appropriately neutral.

Moreover, the judge instructed the jury that he was "totally neutral" and had no opinion about how the case should be decided. The jury acquitted the defendant of deliberately premeditated murder and murder with extreme atrocity or cruelty, something that would not likely have occurred if the judge's inflection had been prejudicial. See *Commonwealth* v. *Hogan*, 426 Mass. 424, 433 (1998), citing *Commonwealth* v. *Keniston*, 423 Mass. 304, 310-311 (1996). There was no error.

[2]Although the prosecutor improperly stated in his closing argument that Butler had pleaded guilty (there was no evidence to support the argument), there was no objection and the issue was not raised on appeal. We are satisfied that this portion of the argument did not create a substantial likelihood of a miscarriage of justice because the prosecutor did not suggest that the judge's acceptance of Butler's plea was somehow a certification of its accuracy or an endorsement of Butler's truthfulness.

c. *Felony-murder instruction.* At the beginning of the felony-murder instruction the judge told the jury that they could find the defendant guilty of murder in the first degree if the Commonwealth "has proven beyond a reasonable doubt that the defendant unlawfully killed the victim" in the commission or attempted commission of certain felonies. Continuing, the judge instructed that "the Commonwealth must prove the following three elements beyond a reasonable doubt. One, that there was an unlawful killing; two, that the killing was committed while the defendant was in the course of committing or attempting to commit a felony punishable by imprisonment for life; and three, that under the circumstances of this case, the defendant committed or attempted to commit the felony with the conscious disregard for human life." The defendant focuses on the absence of any instruction, other than the judge's initial statement, indicating that the Commonwealth must prove that the unlawful killing was committed by the defendant, and he contends that the instruction permitted the jury to convict the defendant of felony-murder if he committed or attempted to commit an armed robbery of Edwards even if someone else had killed Edwards.[3]

A defendant need not commit an unlawful killing to be responsible for murder in the first degree under the felony-murder theory, even if the Commonwealth does not proceed under a theory of joint venture. As long as the unlawful killing occurs in connection with the predicate felony, and at substantially the same time and place, it does not matter that the defendant did not kill the victim: he is responsible for murder. The judge's instruction on felony-murder was consistent with the model jury instructions. See Model Jury Instructions on Homicide 15 (1999). If Edwards had died of fright while the defendant was robbing him, the defendant would be responsible for murder. The defendant received an instruction more favorable than he was entitled to receive, in that the judge instructed the jury that the Commonwealth must prove that the defendant actually killed Edwards.

d. *Instruction on murder in the second degree.* The judge concluded his instruction on murder in the second degree by

---

[3]The Commonwealth did not proceed under a theory of joint venture, and a joint venture instruction was not given.

incorrectly stating that, if the Commonwealth has failed to prove murder in the first degree but has proved murder in the second degree, "you should find the defendant guilty of murder in the first degree." The defendant objected. The judge did not correct his mistake.

A reasonable juror would have understood that the judge's misstatement was a slip of the tongue, because the instruction otherwise makes no sense in the context of the entire set of instructions. See *Commonwealth* v. *Cowels*, 425 Mass. 279, 288 (1997). The judge's instructions concerning completion of the verdict slip directed the jury to select either not guilty, guilty of murder in the first degree, or guilty of murder in the second degree. He further instructed that, if they found the defendant guilty of murder in the first degree, to indicate on the verdict slip each theory for which the Commonwealth had met its burden of proof. In light of this instruction, a reasonable juror could not have understood that his or her duty would be to find the defendant guilty of a particular theory of murder in the first degree that had not been proved, if only murder in the second degree had been proved. The error was harmless.

7. *Motion for a new trial.* The defendant argued in his motion for a new trial that counsel was ineffective for failing to call a pathologist and a ballistician who would have provided evidence at trial that the defendant did not fire the fatal shot. He also claimed that counsel was ineffective for failing to provide the defendant with accurate information about the Commonwealth's intentions to impeach him if he elected to testify, and that as a result of that misinformation the defendant's waiver of his right to testify was not knowing and voluntary. The motion for a new trial was denied, and the defendant's motion for reconsideration was also denied, both by the trial judge.

"A motion for new trial is addressed to the sound discretion of the judge, *Commonwealth* v. *Smith*, 381 Mass. 141, 142 (1980), and the judge's disposition of the motion will not be reversed unless it is manifestly unjust, *Commonwealth* v. *Little*, 384 Mass. 262, 269 (1981), [rev'd on other grounds, *Commonwealth* v. *Santos*, 402 Mass. 775, 788 (1988)]; *Commonwealth* v. *Leavitt*, 21 Mass. App. Ct. 84, 86 (1985), or unless the trial was infected with prejudicial constitutional error.

*Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981). Reversal for abuse of discretion is particularly rare where the judge acting on the motion was also the trial judge. *Commonwealth* v. *Leavitt*, *supra* at 85. *Commonwealth* v. *Gordon*, 13 Mass. App. Ct. 1085 (1982)." *Commonwealth* v. *Schand*, 420 Mass. 783, 787 (1995), quoting *Commonwealth* v. *Moore*, 408 Mass. 117, 125 (1990). When reviewing questions of ineffective assistance of counsel under G. L. c. 278, § 33E, we consider "whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge), and, if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). Where the claim of ineffectiveness involves a tactical decision of defense counsel, we inquire whether the decision was "manifestly unreasonable" when made. *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

a. *Failure to call experts.* Trial counsel filed an affidavit stating that his decision not to call the pathologist or the ballistician he had retained before trial "was not based alone on [the defendant's] best interest," and "[p]art of the reason for not asking these witnesses to testify was not wanting to anger them" because testifying would interfere with their Thanksgiving vacation plans. Although counsel did not disclose any other tactical reason, his affidavit makes clear that he had other reasons. We review under the "manifestly unreasonable" standard.

It is clear from the affidavit of the defense pathologist that he would have offered nothing to detract from the testimony of the Commonwealth's pathologist, and he would have added nothing to the defense. The Commonwealth's pathologist opined that, without Edwards's clothing, it could not be determined whether the shot that killed Edwards had been fired within two feet. He also opined that the absence of any gunpowder residue or stippling in the wound left open a possibility that the fatal shot had been fired from a distance of at least two feet. The defense pathologist indicated that the absence of residue in the wound suggested that it was a "distant" gunshot wound, without specifying. The defense ballistician indicated in his affidavit that two feet was the approximate distance that residue might be detected. The defense pathologist's opinion was generally

consistent with that of the Commonwealth's pathologist, and the defense ballistician's opinion was cumulative of the opinion of the Commonwealth's pathologist. The failure to produce evidence that is essentially cumulative of the Commonwealth's evidence does not justify a new trial. See *Commonwealth* v. *Grace*, 397 Mass. 303, 305-306 (1986).

The defense ballistician's affidavit contained opinions beyond his field of expertise that concerned the feasibility of firing a gun from different locations inside and outside the car, matters for which the jury needed no expert to assist them. Moreover, by acknowledging that a passenger in the rear seat of the car could drape his right arm over the front passenger seat to deliver the fatal shot, the ballistician actually bolstered the Commonwealth's case. He also failed to consider whether the shot could have been fired between the front bucket seats of Edwards's two-door Honda Prelude automobile as Edwards turned to surrender the drugs to the defendant in the rear seat. Thus, calling the ballistician might have been risky. The record indicates that there were tactical reasons, not manifestly unreasonable, why counsel might not have called the ballistician, including the ballistician's support of the testimony of the Commonwealth's pathologist.

b. *Failure properly to advise.* The defendant contends that trial counsel was ineffective because he gave faulty advice about the Commonwealth's ability to impeach him, if he testified, and that the defendant's waiver of his right to testify was thus not knowing and voluntary. A defendant has the burden of proving that his waiver of his right to testify was invalid. See *Commonwealth* v. *Freeman*, 29 Mass. App. Ct. 635, 641-642 (1990). He must "prove, by a preponderance of the evidence, that, but for his counsel's erroneous advice concerning the admissibility of his [criminal] record, he would have testified in his own defense." *Id.* at 642, citing *Commonwealth* v. *Jordan*, 207 Mass. 259, 275 (1911), aff'd, 225 U.S. 167 (1912). It is not enough to say that counsel had discouraged him from testifying. See *Commonwealth* v. *Cook*, 438 Mass. 766, 776-777 (2003).

Trial counsel filed a motion in limine to preclude the Commonwealth from impeaching the defendant with a prior conviction of attempted murder on a theory of joint venture. The

defendant filed an affidavit in support of his motion for a new trial in which he stated that he told counsel that he had been acquitted of the charge, but that counsel advised him that the judge ruled that he could be impeached with the conviction. The record reflects that counsel must have realized his mistake because, during the hearing on the motion in limine, he correctly described the conviction which he sought to have excluded as an armed assault under a theory of joint venture. The defendant was present during the hearing on the motion. The judge denied the motion in limine and stated his reasons in open court, in the presence of the defendant. The judge rejected the defendant's affidavit filed in support of the new trial motion as not credible. Trial counsel's affidavit in support of the new trial motion did not indicate any willingness to accept fault for allegedly misadvising the defendant on the impeachment issue, and given that he had accepted some fault in the same affidavit as to the claimed ineffectiveness for not calling two expert witnesses to testify, the judge could have construed this as an indication that the motion for a new trial was without merit as to the impeachment issue. See *Commonwealth* v. *Lopez*, 426 Mass. 657, 665-666 (1998); *Commonwealth* v. *Savage*, 51 Mass. App. Ct. 500, 505 n.6 (2001) ("Conspicuously absent was an affidavit from trial counsel supporting the defendant's contention").

The defendant also alleged in his affidavit in support of his motion for a new trial that defense counsel failed to advise him that the prosecutor agreed during a sidebar conference that he would not introduce a prior conviction of armed robbery. In rejecting the defendant's allegation, the judge noted that, after the prosecutor stated that he would not use the prior armed robbery conviction, he "witnessed defense counsel go back and speak for a matter of minutes with the defendant at counsel table. Thereupon the defendant and his counsel and the [prosecutor] approached side bar, where the Court conducted a colloquy with the defendant regarding his rights to testify or not to testify." The judge was entitled to reject summarily any claim supported only by the defendant's self-serving affidavits, and infer from his own observation of the defendant and counsel at trial that they were conferring over precisely the matter the

defendant now claims was never discussed. See *Commonwealth* v. *Degro*, 432 Mass. 319, 337 (2000); *Commonwealth* v. *Savage*, *supra* at 505. There was no abuse of discretion or other error in the denial of the defendant's motion for a new trial.

8. *Amended motion for a new trial.* The judge declined to consider the defendant's amended motion for a new trial, which raised two new issues. His reason was that, because the defendant's direct appeal was pending, and because the first motion for a new trial had been decided and an appeal had been taken therefrom, he was without jurisdiction to consider the amended motion. We agree.

General Laws c. 278, § 33E, states in part: "After the entry of the appeal in a capital case and until the filing of the rescript by the supreme judicial court motions for a new trial shall be presented to that court and shall be dealt with by the full court, which may itself hear and determine such motions or remit the same to the trial judge for hearing and determination." The defendant's first motion for a new trial was correctly filed with this court, then remitted to the judge, who decided the motion. After the defendant appealed from the denial of his motion for a new trial, the Superior Court was without jurisdiction to take further action on that motion without authorization from this court. See G. L. c. 278, § 33E. See also *Commonwealth* v. *Cronk*, 396 Mass. 194, 197 (1985). The amended motion had not been filed in this court, as required by § 33E, and this court did not authorize the trial judge to determine the motion.

Because the original motion had been determined, the amended motion for a new trial, which alleged two new claims, was essentially a second motion for a new trial. A defendant may not defeat the gatekeeper provision of § 33E simply by filing amended motions for a new trial with the Superior Court. The judge correctly declined to consider the defendant's amended motion.

9. *Duplicative conviction.* The defendant correctly argues that his conviction of the armed robbery of Ryan Edwards is duplicative as the underlying felony of his murder conviction, and must be vacated. See *Commonwealth* v. *Anderson*, 425 Mass. 685, 692 (1997). The Commonwealth does not dispute this

issue. However, the conviction of the armed robbery of Clarke may stand, as it is not duplicative of the felony-murder conviction. See *Commonwealth* v. *Paulding*, 438 Mass. 1, 13 (2002).

10. *G. L. c. 278, § 33E.* We see no reason to exercise our power under G. L. c. 278, § 33E, to reduce the verdict or order a new trial. The convictions are affirmed, except for the conviction on indictment numbered 94-11067-003, count one, alleging armed robbery of Ryan Edwards, which is hereby vacated. That indictment is remanded to the Superior Court for dismissal. See *Commonwealth* v. *Paulding, supra.* The orders denying the defendant's motion for a new trial are affirmed.

*So ordered.*