# United States Court of Appeals
## For the First Circuit

No. 14-1400

ANTHONY MOORE,

Petitioner, Appellant,

v.

THOMAS DICKHAUT,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Edward J. O'Brien, with whom O'Donnell, Trossello & O'Brien, LLP was on brief, for appellant.
Argie K. Shapiro, Assistant Attorney General, Criminal Appeals Division, with whom Maura Healey, Attorney General, was on brief, for appellee.

November 22, 2016

**HOWARD**, **Chief Judge**.  Appellant Anthony Moore filed the instant habeas petition seeking to set aside his 2006 Massachusetts conviction for unarmed robbery.  See 28 U.S.C. § 2254.  Moore's sole contention on appeal is that the admission of certain identification evidence at his trial violated due process.  Because the Massachusetts Appeals Court's adjudication of this issue did not constitute an unreasonable application of Supreme Court precedent, we affirm the district court's denial of Moore's petition.

I.

Moore was convicted in connection with the robbery of a Sovereign Bank branch located on Causeway Street in Boston.  Shortly after Moore's arrest on this charge, law enforcement arranged for several bank employees to view a photo array.  The array included Moore's photograph, as well as seven other photos selected by a computerized imaging system for their resemblance to Moore.  Two witnesses provided a positive identification of Moore.

About two months later, law enforcement conducted a lineup for bank employees.  A police officer who was not part of the investigation selected seven "fillers" to be included along with Moore.  Defense counsel attended the lineup and made no objection to the process.  Four bank employees positively identified Moore.

Moore filed a motion seeking to preclude the Commonwealth

from introducing evidence of these pre-trial identifications, as well as in-court identifications by the same witnesses. After an evidentiary hearing, the state trial court denied Moore's motion. With respect to the array, the court found that the "photos all appear similar enough to each other so that no single individual stands out." Along the same lines, the court also concluded that the eight individuals in the lineup were "all similar in appearance." In connection with both the array and the lineup, the court found "that the police did not do or say anything" to influence the witnesses to identify Moore. For these reasons, it held that the identification procedures were not suggestive and allowed the evidence to go to the jury. Ultimately, the jury returned a guilty verdict.

The Massachusetts Appeals Court affirmed Moore's conviction, rejecting the claim that the identification procedures violated his constitutional rights. It held that those procedures were "not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Commonwealth v. Moore, 929 N.E.2d 1001, 2010 WL 2773260, at *2 (Mass. App. Ct. July 15, 2010) (unpublished table decision) (citation omitted). The Massachusetts Supreme Judicial Court subsequently denied review. See 934 N.E.2d 826 (Mass. Sept. 16, 2010) (unpublished table decision).

The federal district court subsequently denied Moore's § 2254 habeas petition, and we granted a certificate of appealability. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22.

II.

We review the district court's denial of Moore's petition de novo. See Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007). But, like the district court, we must afford a high degree of deference to the Massachusetts Appeals Court's decision. Indeed, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant Moore's petition only if we find that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 376 (2000) (quoting 28 U.S.C. § 2254(d)(1)). Because Moore develops no argument that the challenged decision was "contrary to" Supreme Court precedent,[1] we restrict our inquiry to the issue of unreasonable application.

A state court unreasonably applies federal law where it "identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case."

---

[1] Any argument on this point would, in any event, be unavailing. Moore appears to concede that the Massachusetts court applied the correct legal standard, and he points to no Supreme Court precedent involving facts "materially indistinguishable" from those at issue here. Williams, 529 U.S. at 405.

- 4 -

Id. at 407. Under this "highly deferential" standard, it is not enough for the state court to have reached a decision that is "incorrect or erroneous." Teti, 507 F.3d at 56-57. Rather, the error must be clear "beyond any possibility for fairminded disagreement." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citation omitted). Critically, state courts do not act unreasonably by declining to extend Supreme Court precedent. Id. at 1706. Where, as here, the highest state court, namely, the Massachusetts Supreme Judicial Court, denies review, we "look through to the last reasoned decision" issued by the Massachusetts Appeals Court. Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) (citation omitted).

In ruling on Moore's petition, we must also defer to the state court's fact-finding, meaning its determination of "basic, primary, or historical facts, such as witness credibility and recitals of external events." Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (citation omitted). This deference extends to factual determinations made by a trial court and affirmed on direct appeal. See John v. Russo, 561 F.3d 88, 91 n.4 (1st Cir. 2009). While the Supreme Court has yet to clarify the relationship between the two AEDPA subsections relating to factual findings, see 28 U.S.C. § 2254(d)(2) and (e)(1), both "express the same fundamental principle of deference." John, 561 F.3d at 92 (citation omitted). For purposes of this appeal, we accept Moore's position that the

challenged factual findings are merely reviewed for reasonableness under § 2254(d)(2). See Wood v. Allen, 558 U.S. 290, 300-01 (2010); cf. 28 U.S.C. § 2254(e)(1) (establishing presumption of correctness that may be rebutted only by clear and convincing evidence).

In an effort to avoid the narrow constraints of AEDPA review, Moore suggests that the deferential standards outlined above do not apply because his claims were not "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). A claim is "adjudicated on the merits" so long as "there is a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Clements, 592 F.3d at 52 (citation omitted). In other words, AEDPA requires only "adjudication, not explanation." Id. at 55.

Here, Moore argues that the Massachusetts Appeals Court only considered his state constitutional claims and did not adjudicate the federal constitutional claims raised in his petition. Where a state court is presented with both state and federal claims and "does not expressly apply the federal standard but resolves the issue under a state law standard that is more favorable to defendants," we "presume the federal law adjudication to be subsumed within the state law adjudication." Sleeper, 510 F.3d at 38 (citation omitted); see also Johnson v. Williams, 133

- 6 -

S. Ct. 1088, 1096 (2013) ("[I]f the state-law rule . . . is at least as protective as the federal standard . . . then the federal claim may be regarded as having been adjudicated on the merits"). Here, the Massachusetts Supreme Judicial Court has expressly described the state standard for due process challenges to identification procedures as "more favorable" to defendants than the federal standard discussed below. See Commonwealth v. Walker, 953 N.E.2d 195, 205 n.13 (Mass. 2011). Accordingly, we presume that the Massachusetts court adjudicated Moore's federal claims and review its decision under AEDPA's deferential standard.[2]

## III.

Moore principally argues that the pre-trial identification procedures were impermissibly suggestive because he was the only person in the photo array or lineup with a facial scar. Moore does not point to any additional physical or other features that set him apart from the other participants. We have little difficulty concluding that the Massachusetts Appeals Court did not unreasonably apply Supreme Court precedent in rejecting this claim.

The Supreme Court has held that pre-trial

---

[2] Moore also suggests that the Massachusetts Appeals Court's decision was limited to the photo array and did not consider the lineup. This contention is belied by the opinion's express acknowledgement that Moore's challenge applied to both identification procedures. See Moore, 929 N.E.2d 1001, at *2 n.3.

identifications resulting from procedures "so impermissibly suggestive as to give rise to a very substantial likelihood of . . . misidentification" may offend due process. Simmons v. United States, 390 U.S. 377, 384 (1968); see also Neil v. Biggers, 409 U.S. 188, 198 (1972). Where the likely mistake is "irreparable," subsequent courtroom identifications may be similarly prohibited. Simmons, 390 U.S. at 384. But, even where this standard is met, the federal constitution does not require automatic exclusion of the identification. Rather, "if the indicia of reliability are strong enough to outweigh the corrupting effect of the . . . suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." Perry v. New Hampshire, 132 S. Ct. 716, 720 (2012).[3]

It bears emphasis that the issue of reliability "comes into play only after the defendant establishes improper police conduct." Id. at 726. Absent unnecessarily suggestive procedures, reliability is ensured through traditional trial protections, such as "the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable

---

[3] It is on this point that Massachusetts law diverges from the federal standard. Under the state constitution, identifications resulting from impermissibly suggestive procedures are "per se excluded." Walker, 953 N.E.2d at 205 n.13.

doubt."  Id. at 721; see also United States v. Melvin, 730 F.3d 29, 34 (1st Cir. 2013) ("Jurors should not be treated as gullible dupes, and . . . identification evidence should be withheld from them only in extraordinary cases." (citations omitted)).  In the present case, for the reasons discussed below, the Massachusetts Appeals Court reasonably concluded that the procedures used were not impermissibly suggestive.  Accordingly, we need not consider the reliability of the identifications.

The Supreme Court has applied its rule against suggestive identification procedures to restrict the "practice of showing suspects singly to" witnesses rather than showing them "as part of a lineup."  Stovall v. Denno, 388 U.S. 293, 302 (1967); see also Biggers, 409 U.S. at 195-99 (implying that one-man "showup," in which the police walked the defendant by the victim, may have been suggestive); Manson v. Brathwaite, 432 U.S. 98, 107-09 (1977) (noting state's concession that "display of a single photograph" of the defendant was suggestive).  The Court has, however, suggested that, in some circumstances, the rule may extend beyond one-man showups or the use of single photos. See Simmons, 390 U.S. at 383 (noting that the danger of misidentification is also increased where witnesses are shown "the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized"); Foster v. California, 394 U.S. 440, 442-43 (1969) (holding that series of identification

procedures, including a three-person lineup where the defendant "stood out" due to his height and leather jacket, a subsequent "one-to-one confrontation" between the witness and the defendant, and a third lineup, was impermissibly suggestive).

The facts of the present case are far removed from these Supreme Court precedents. Indeed, rather than a showup or presentation of a single photo, the police conducted a photo array and a lineup, each involving Moore and seven other individuals. The Massachusetts trial court expressly found that all of the participants generally had a similar appearance, and Moore does not seriously challenge this finding on appeal. With respect to the photo array, our review of the record confirms the state court's conclusion. Moore and the other seven individuals depicted all appear to be African-American males with comparable ages, skin tones, and hairstyles. Moore's facial scar, while visible, is relatively small. The Massachusetts court also found that Moore's scar "is a characteristic which is difficult to replicate in individuals who otherwise resemble the defendant." Again, Moore makes no effort to challenge this factual determination. Indeed, a scar is different than other potentially distinguishing features that can be easily removed or changed (e.g., clothing or accessories). While the police could conceivably have made efforts to conceal Moore's scar, this practice might itself have undermined the reliability of the identification by artificially altering

Moore's facial features. In any event, we need not opine on the permissibility or advisability of such precautions. For present purposes, it suffices that the state court reasonably concluded that the police were not required to conceal Moore's scar. See, e.g., United States v. Holliday, 457 F.3d 121, 126 (1st Cir. 2006) (rejecting challenge to photo array based on the defendant's distinctive "skin discoloration"); United States v. Moore, 115 F.3d 1348, 1360 (7th Cir. 1997) (finding that photo array was not suggestive despite the defendant's "distinctive eyebrow"); Taylor v. Swenson, 458 F.2d 593, 596-98 (8th Cir. 1972) (holding that lineup was admissible even where the defendant stood out because of a facial scar and a "filed down" tooth).

Moore relies almost exclusively on United States Court of Appeals decisions to argue that his facial scar rendered the identification procedures impermissibly suggestive. As an initial matter, to the extent these lower federal court rulings stray beyond the applicable Supreme Court precedents, they are insufficient to demonstrate an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1). See Lopez v. Smith, 135 S. Ct. 1, 4 (2014). In any event, the cases Moore cites are largely distinguishable. See, e.g., United States v. Castro-Caicedo, 775 F.3d 93, 98 (1st Cir. 2014) (noting that the defendant was "far older" and had "darker skin" than anyone else in the photo array and was the only person whose "sagging belly" (matching the

witness's description) was shown); Raheem v. Kelly, 257 F.3d 122, 137 (2d Cir. 2001) (finding lineup suggestive where the defendant was the only participant wearing a leather coat, which was "the most prominent feature" of the witnesses' prior descriptions).

Moore's other contentions are meritless. First, he argues that the identification procedures were unduly suggestive because he was the only person to appear in both the photo array and lineup. But we have held on direct appeal that "[a] suspect's inclusion in two photospreads . . . is not constitutionally impermissible." United States v. Maguire, 918 F.2d 254, 263 (1st Cir. 1990). It follows that Moore's inclusion in both the photo array and the lineup similarly does not offend due process. Next, Moore points to evidence that the police described the array to witnesses as "photos of suspects." Again, Maguire forecloses his claim. See id. at 264 (noting that we have "condone[d] . . . suggesting that the suspect is one of those shown in the array"). Third and finally, Moore contends that the identifications were impermissibly suggestive because he was number six in both the array and the lineup. This argument is contradicted by the state trial court's express finding that "[n]one of the witnesses paid attention to the order in which the photos or the individuals in the lineup were presented." Moore's record citations fail to convince us that this determination was unreasonable.

IV.

For the foregoing reasons, we **AFFIRM** the denial of Moore's § 2254 petition.