# United States Court of Appeals
## For the First Circuit

No. 15-2153

JAMES LUCIEN,

Petitioner, Appellant,

v.

LUIS SPENCER,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Susan Church, with whom Demissie & Church was on brief, for
appellant.
Eva M. Badway, Assistant Attorney General, Criminal Bureau,
with whom Maura Healey, Attorney General of Massachusetts, was on
brief, for appellee.

September 15, 2017

**KAYATTA**, **Circuit Judge**. In November 1995, a Massachusetts jury convicted James Lucien of first-degree murder, two counts of armed robbery, and one count of unlawful possession of a firearm. Lucien was sentenced to life in prison, whereupon he sought direct and collateral review in the Supreme Judicial Court of Massachusetts (SJC). When the majority of his state challenges were rebuffed, see Commonwealth v. Lucien (Lucien I), 801 N.E.2d 247, 251 (Mass. 2004), Lucien petitioned the federal district court for the District of Massachusetts for a writ of habeas corpus, arguing that the trial court improperly handled the admission of a plea agreement made by a government witness, that the district court's jury instructions omitted an element of the murder offense, and that trial counsel was constitutionally ineffective. The district court denied Lucien's petition. See Lucien v. Spencer (Lucien II), No. 07-11338-MLW, 2015 WL 5824726, at *35 (D. Mass. Sept. 30, 2015). Lucien now appeals. For the reasons that follow, we affirm.

## I. Background

Lucien's conviction followed a five-day trial in which evidence was introduced to show that Lucien and a man named Jamal Butler agreed to rob Alfred Clarke and his brother Ryan Edwards, whom Lucien and Butler knew to be a drug dealer. The Commonwealth presented evidence that Butler arranged a drug deal through Clarke. The arrangement eventually led to Lucien riding in the backseat of

Edwards's two-door sedan while Edwards drove and Clarke sat in the front passenger seat. Lucien drew a firearm and ordered Clarke to hand over his money, a pager, and a bracelet he was wearing. He then ordered Clarke out of the car. After the car pulled away and turned a corner, Edwards was shot in the lower-right torso. The bullet, apparently fired from a .25 caliber automatic weapon, killed him. A .25 caliber shell casing was later found in the vehicle, but the murder weapon was never found. Butler testified that when he reconvened with Lucien the following day, the men split the loot and Lucien admitted he had shot Edwards.

The prosecution's principal theory of the case was that Lucien committed an armed robbery and killed Edwards in the process. In support of this theory, the prosecution presented the testimony of a medical examiner who opined that, given the angle of the bullet's entry into Edwards's body, the shot could have been fired from the backseat of his vehicle. Clarke testified that Lucien claimed to be interested in purchasing cocaine from Edwards but then drew a gun to commit a robbery once Edwards began driving. He testified that he handed over his money, pager, and bracelet as his brother pulled over; he exited as the car began to drive away; and he saw a flash within the vehicle and heard a gunshot. Butler, who pled guilty to unarmed robbery, testified that he and Lucien met before the robbery at Butler's girlfriend's home to forge a plan to rob Edwards in a staged drug deal; that

Butler set up the deal because he knew Edwards; that Butler made first contact and arranged to meet Edwards and Clarke in Edwards's car in a parking lot; that Lucien and Butler drove to the parking lot together; that Butler watched Lucien get in the back of Edwards's and Clarke's car before it drove away; and that when Lucien came over the next day to split the spoils, he reported he shot Edwards "to make it look good."

Lucien (through counsel) seized on the fact that Clarke also admitted that he, too, had a firearm on his person during the robbery. Lucien's defense theory was that Clarke fired the fatal bullet after he got out of the car (presumably trying to hit Lucien). Providing some support for this defense, one officer who responded to the scene testified to Edwards's dying declaration that he was shot by someone outside the car (rather than, as Clarke testified, by Lucien inside the car), and another officer testified to hearing two gunshots. There were also some inconsistencies in Clarke's and Butler's testimonies, and each had incentive to lie at Lucien's expense--Butler to secure a plea deal, and Clarke to shift blame for a shooting he himself arguably perpetrated. On the other hand, there was the shell casing found in the car, and the Commonwealth's ballistician testified that Edwards was likely shot from close range (although that testimony could not be confirmed because Edwards's clothes were lost at the hospital and no soot or powder was found on Edwards's body).

The jury sided with the Commonwealth, and the state trial court sentenced Lucien to life in prison on the first-degree murder charge, a concurrent four-to-five-year term on the illegal firearm charge, and concurrent eighteen-to-twenty-year terms for the two armed robbery charges.  He timely appealed, arguing, among other things, that the trial court's jury instructions were flawed because they did not "instruct the jury that they could not consider Butler's guilty plea as evidence against the defendant." Lucien I, 801 N.E.2d at 255.  He also took issue with the felony-murder instructions, arguing that they did not comply with Massachusetts law because they allowed the jury to convict Lucien of murder even if Clarke fired the fatal shot.  Id. at 256.

In addition to his direct appeal, Lucien filed a motion for a new trial before the SJC pursuant to Massachusetts General Laws chapter 278, section 33E.  The new-trial motion asserted that Lucien's trial counsel was ineffective for two reasons.  First, he allegedly gave "faulty advice about the Commonwealth's ability to impeach [Lucien], if he testified, and that [his] waiver of his right to testify was thus not knowing and voluntary." Id.  Second, trial counsel did not call two experts, a pathologist and a ballistician, both of whom were retained before trial.  Lucien claimed those experts would have undermined the Commonwealth's evidence by opining that Edwards was likely shot from farther away than the backseat of his vehicle.  Lucien also argued that one of

- 5 -

his armed robbery convictions was duplicative of his felony-murder conviction, and that the SJC should exercise its discretionary power to relieve him from the verdict or grant him a new trial. See Mass. Gen. Laws ch. 278, § 33E. The SJC remitted the motion to the trial judge, the motion was denied, and Lucien appealed.[1]

The SJC consolidated Lucien's direct and collateral appeals and then denied relief on all but Lucien's duplicity challenge, vacating his conviction for the armed robbery of Edwards because it was duplicative of the first-degree murder conviction. (Lucien was convicted on a felony-murder theory, so the armed robbery was an element of the murder offense.) See Lucien I, 801 N.E.2d at 251, 260. Lucien filed a second motion for a new trial a few months later in the trial court, reasserting his ineffective assistance claims concerning his right to testify and trial counsel's refusal to call the pathologist and the ballistician,

---

[1] The procedural history is actually a bit more complex: Lucien filed a pro se motion for a new trial in the trial court in 1996. With the assistance of counsel, he submitted an amended motion to the SJC (the proper body to consider a new-trial motion, see Mass. Gen. Law ch. 278, § 33E) in 1997. The motion, which appears to have concerned whether trial counsel was ineffective for failing to provide Lucien all the information he would need in order to knowingly waive his right to testify and whether the armed robbery conviction was duplicative of the felony-murder conviction, was remitted to the trial judge and denied. Lucien appealed that decision and moved for reconsideration, adding the ineffectiveness claims based on his attorney's refusal to call the ballistician and the pathologist. The motion was again denied. In any event, respondent makes no contention that Lucien failed to raise in his original new-trial motion the two ineffective-assistance claims described here.

and adding ineffective assistance claims based on trial counsel's alleged mishandling of a suppression motion and counsel's "fail[ure] to object to the lack of appropriate instructions to [the] jury on [the] limited purpose for which [a] co-defendant's guilty plea could be used."  He also asserted that he received unconstitutionally substandard assistance of appellate counsel in failing to raise on appeal the ineffective assistance of trial counsel.  The trial court denied the motion, and a single justice of the SJC denied leave to appeal.  See Mass. Gen. Laws ch. 278, § 33E.

A petition for a writ of habeas corpus under 28 U.S.C. § 2254 timely followed in the District of Massachusetts.  The district court denied Lucien's petition, see Lucien II, 2017 WL 5824726, at *35, and this timely appeal ensued.

## II.  Discussion

We review a district court's denial of a petition for habeas corpus de novo.  See Moore v. Dickhaut, 842 F.3d 97, 99 (1st Cir. 2016) (citing Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007)).  Like the district court, however, we are required to afford significant deference to the state court's decision under most circumstances.  See Scoggins v. Hall, 765 F.3d 53, 57 (1st Cir. 2014).  Unless a state court "does not address the merits of a federal claim," see Jenkins v. Bergeron, 824 F.3d 148, 152 (1st Cir. 2016) (quoting Zuluaga v. Spencer, 585 F.3d 27, 30 (1st Cir.

- 7 -

2009)), the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) permits us to grant a habeas petition in only two circumstances: (1) if the SJC's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) the decision on the federal claim was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). The petitioner must also show that the state court's error had a "substantial and injurious effect" on the jury's verdict. See Fry v. Pliler, 551 U.S. 112, 121–22 (2007) (citing Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)).

Lucien advances four claims on appeal. We assess each of these challenges in turn.

## A. Butler's guilty plea

Lucien's first argument concerns the entry of Butler's plea agreement into evidence, and the judge's instructions about the role it could play in the jury's verdict. As Butler's direct examination was drawing to a close, the trial court allowed the Commonwealth to read Butler's plea agreement into evidence, and to elicit Butler's comment on it. Lucien's counsel objected, saying, "there is case law that creates certain obligations with respect to agreements of this type. I think, you know, just to protect the record, I'm going to object to the agreement, all right?"

- 8 -

Citing Commonwealth v. Ciampa, 547 N.E.2d 314 (Mass. 1989), counsel requested that the court instruct the jury not to inappropriately rely upon Butler's plea agreement.

In response, the trial judge admonished the jury--twice, and in no uncertain terms--that the government had "no way of knowing whether or not a witness is telling the truth," and that the plea agreement's indication that Butler was obligated to honestly testify did not so signify.[2]  Lucien's counsel did not

_____

[2] At the time the plea agreement was entered into evidence, the trial judge told the jury:

> Ladies and gentlemen, the Exhibit that has been marked number 8, evidently is set up by the evidence as some sort of agreement between the attorney on behalf of Mr. Jamal Butler and the Commonwealth of Massachusetts, through the [prosecutor] who's trying this case.  In here it indicates that the obligation of Mr. Butler is to tell the truth completely to all the questions before a Grand Jury and any trial.  I just want to say this, folks, that the Commonwealth has no way of knowing whether or not a witness is telling the truth or not.  And they cannot vouch for that truth.  That is totally and completely up to our Jury, which Jury that's your function.  Only you can determine, the Commonwealth cannot vouch for it.  It's totally and completely up for your determination and judgment based on all the evidence and what you've heard here, folks.
>
> . . . .
>
> . . . Just keep in mind that it's not the Commonwealth's duty to determine who's telling the truth, namely the District Attorney, but

- 9 -

renew his objection or otherwise indicate to the trial judge that this instruction failed to address his concern.

In closing argument, the prosecutor suggested to the jury that Butler should be believed because "he pled guilty and he agreed to cooperate," saying, "[I]f you think that Jamal Butler took the stand and he wasn't involved in any robbery with this man and he's just decided to spend five years, the next five years, of his life in jail for this, I suggest that's the best motive for him to be truthful." Lucien did not object. After closing arguments, the trial judge instructed the jury, "The fact that [Butler] testified pursuant to [a plea] agreement[] should cause you to examine his testimony with extra care and caution. The fact that the Commonwealth has entered into an agreement with the witness does nothing to change the fact of the determination of the witness's truthfulness." The judge also instructed the jury that "the requirement in the agreement that the witness testif[y] truthfully [does not] mean that the government has a way of knowing that the witness is telling the truth."[3] Again, Lucien's counsel

---

totally and completely you, the Jury here in Suffolk County, folks.

[3] The judge's instruction, in full, was as follows:

There has been evidence in this case that one of the Commonwealth's witnesses entered into what is known as an agreement with the Commonwealth. The agreement has been entered into evidence as an exhibit. The fact that

- 10 -

did not object or indicate that this instruction was not the one he was looking for.

On appeal to the SJC, Lucien argued that the jury instructions were improper because the trial judge did not "instruct the jury that they could not consider Butler's guilty plea as evidence against the defendant." Lucien I, 801 N.E.2d at 255. As a result, claimed Lucien, the trial court violated Lucien's "fundamental rights" because it allowed the jury to decide against him based on hearsay evidence not "presented in open court."

The procedural status of this claim that the jury instruction failed to deal properly with Butler's plea agreement

_____

this witness testified pursuant to such an agreement[] should cause you to examine his testimony with extra care and caution. The fact that the Commonwealth has entered into an agreement with the witness does nothing to change the fact of the determination of the witness's truthfulness. It's solely a question for you the jury. Nor does the requirement in the agreement that the witness testified truthfully mean that the government has a way of knowing that the witness is telling the truth.

You should consider the motivation of the witness in testifying and what rewards or inducements or benefits are flowing to that witness as a consequence of that witness's testimony and if any [of] those promises in any way affect the credibility of this particular witness.

is quite complicated.  The SJC found that Lucien's trial counsel never objected to the instructions on the grounds now being asserted.  See id.  Normally such a finding would constitute independent and adequate state-law grounds for the judgment that would effectively preclude our direct review of the forfeited argument, absent certain special circumstances.  See Barbosa v. Mitchell, 812 F.3d 62, 67 (1st Cir. 2016) (explaining that procedural default is an independent and adequate state-law ground for a decision, and may only be forgiven if petitioner shows cause for and prejudice from the default).  Here, though, in deciding not to consider Lucien's argument on the merits, the SJC relied on an assertion that "there was no evidence that Butler had pleaded guilty."  Lucien I, 801 N.E.2d at 255.  This was plainly wrong. Not only was there evidence that Butler pleaded guilty, the plea agreement itself was read into evidence and was the subject of inquiry and comment.  Adding yet another twist is the indirect manner in which Lucien now seeks to get at this whole issue.  He alleges that his trial counsel was ineffective in failing to raise an apt objection to the instructions, and that his appellate counsel was ineffective in failing to pursue an argument that trial counsel was ineffective.

The parties' briefs each debate in a discursive manner the ramifications of these complexities.  Lucien seems to want us to rely on the SJC's factual error as a basis for conducting de

- 12 -

novo review of everything, even the state-law issue of whether trial counsel raised an apt objection. The Commonwealth, in turn, seems to argue that we need not address Lucien's argument because he procedurally defaulted his claim--i.e., his claim was adjudicated on independent and adequate state-law grounds--and the default is inexcusable because Lucien's counsel was not ineffective and "there was no error in the jury instruction." Of course this last point--the claim that the jury instructions were fine--invites us to conduct de novo review of the unobjected-to jury instruction, and thereby adjudicate a question of state law.

Rather than unravelling this skein, we give Lucien several assumed benefits of the doubt and focus on whether the instruction, even if a trial error, "had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see Connolly v. Roden, 752 F.3d 505, 511 (1st Cir. 2014). If it did not, then habeas relief is foreclosed. See Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015).

This was a case in which Butler testified in person. He described what Lucien did, and he admitted that he participated in planning the robbery of Edwards and Clarke. To the extent that the making of a deal implied Butler was getting something for his testimony, that implication cut in Lucien's favor. In this context, the agreement might plausibly have cut against Lucien

only if the jury were permitted to infer from it that the prosecutors knew Butler to be telling the truth or were otherwise vouching for him. See United States v. Wihbey, 75 F.3d 761, 772 (1st Cir. 1996). This potential prejudice, though, was well covered by the instructions as given.

Lucien points to no other possible prejudice beyond baldly asserting that the plea agreement "shift[ed] the burden of proof." How that is so, Lucien does not explain. The only cases to which Lucien points involve the very different situation in which the prosecution puts into evidence the guilty pleas of non-testifying co-conspirators. See, e.g., United States v. Ofray-Campos, 534 F.3d 1, 23 (1st Cir. 2008) ("[W]here a missing co-defendant does not testify, 'it is generally accepted that absent agreement, courts and prosecutors generally are forbidden from mentioning that a co-defendant has either pled guilty or been convicted.'" (quoting United States v. Carraway, 108 F.3d 745, 756 (7th Cir. 1997))); United States v. Blevins, 960 F.2d 1252, 1260 (4th Cir. 1992) ("Courts have generally agreed that evidence of a non-testifying co-defendant's guilty plea should not be put before the jury."). Such agreements by non-testifying co-conspirators have little apparent relevance, other than suggesting guilt by association, without any opportunity for cross-examination. Here, Butler's relevant testimony concerned precisely his relevant association with Lucien, and Butler was subject to cross-

examination, which itself could point to the agreement as a motive to lie.  Moreover, this was not a case in which A and B are accused of doing X together, where X is the pivotal act upon which conviction hinges, and B then pleads guilty to X, creating a potential for the prosecution to suggest that B's plea must mean A did it too.  See, e.g., United States v. Dworken, 855 F.2d 12, 30-32 (1st Cir. 1988).  Here, the pivotal issue was whether Lucien shot Edwards, and Butler did not plead guilty to conspiring with Lucien to do that.  Nor, finally, did the prosecutor suggest to the jury that it should view the plea agreement itself as evidence that Lucien shot Edwards.

Having been pointed to no other possible prejudice, we therefore comfortably find that even were it somehow proper to review the jury instructions de novo and find them to be in error, the error would not have caused the type of prejudice that would warrant habeas relief.

## B.    Felony-murder instruction

Lucien's next claim is that his due process rights were violated when the trial court gave an erroneous instruction on the elements of felony murder under Massachusetts law.  The challenged instructions read as follows:

> The statue [sic] defining murder allows you to find the defendant guilty of first degree murder if you find the Commonwealth has proven beyond a reasonable doubt that the defendant unlawfully killed the victim in the commission

of or attempted commission of a crime, punishable by principle of law. This principle of law is known as the felony murder rule.

The effect of the felony murder rule is to substitute the intent to commit the underlying felony for the malice aforethought as defined earlier required for murder. In order to find the defendant guilty of first degree murder under the felony murder rule, the Commonwealth must prove the following three elements beyond a reasonable doubt. One, that there was an unlawful killing, two, that the killing was committed while the defendant was in the course of committing or attempting to commit a felony punishable by imprisonment for life, and three, that under the circumstances of this case, the defendant committed or attempted to commit the felony with the conscious disregard for human life.

Lucien contends, as he did before the SJC, that felony murder under Massachusetts law requires the Commonwealth to prove beyond a reasonable doubt that the defendant or a joint venturer proximately caused the death of the deceased victim, see, e.g., Commonwealth v. Tejeda, 41 N.E.3d 721, 724-25 (Mass. 2015), and that the instructions given in this case permitted the jury to convict even if they found that Clarke (or someone else other than a joint venturer) committed the killing. In so arguing, Lucien concedes that one line of the instructions given did, in the words of his appellate brief, "require[] the jury to find the defendant to have killed the victim." He argues, however, that other portions of the instructions--namely, instructions passively stating that the jury needed to find "that there was an unlawful

- 16 -

killing"--undermined that instruction and rendered it unconstitutional under In re Winship. 397 U.S. 358, 360-61 (1970).

The SJC construed the instructions otherwise, concluding that the trial court "instructed the jury that the Commonwealth must prove that [Lucien] actually killed Edwards." Lucien I, 801 N.E.2d at 257. As so construed, this instruction was actually better than Lucien deserved under Massachusetts felony murder law. See id. (noting that "[t]he defendant received an instruction more favorable than he was entitled to receive"). It is true that the instructions did not reiterate this requirement in subsequently discussing the meaning of "unlawful killing." That subsequent discussion, however, can most easily be read as merely specifying the other elements of the offense, all of which were predicated on the instructions' initial requirement that the jury find the defendant to have killed the victim. Out of context, the fact that the requirement was not repeated in the subsequent instructions might have led jurors to conclude that they need not find that Lucien shot Edwards. In context, though, there was little such risk. The Commonwealth never argued that Lucien was still guilty if Clarke fired the shot. Rather, the prosecution trained its evidence and argument on the contention that Lucien-- not Clarke--fired the fatal shot.

Of course, in this habeas proceeding we do not sit as the final arbiter of Massachusetts law. "[T]he fact that [an]

instruction was allegedly incorrect under state law is not a basis for habeas relief. . . . The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). An instruction will be found to corrupt a conviction where, "in the context of the instructions as a whole and the trial record," the instruction violates "fundamental fairness" by creating a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Id. at 72-73 (quoting Dowling v. United States, 493 U.S. 342, 352 (1990), and Boyde v. California, 494 U.S. 370, 380 (1990)). For the reasons stated above, it was not an "unreasonable application" of due process law for the SJC to find no such likelihood here. Accordingly, we reject Lucien's challenge to the constitutionality of the felony-murder instruction.

## C. Waiver of right to testify

Toward the end of Lucien's trial, his counsel and the prosecutor went to sidebar with the judge. They discussed a number of matters, including the prosecutor's intention, which he had already communicated to Lucien's attorney, not to introduce Lucien's past convictions as a means of impeaching him should he choose to testify. After the sidebar conversation concluded, Lucien's attorney returned to the defense table and visibly

conferred with his client. When Lucien and his counsel came back to sidebar, the judge informed him of his right to testify. Lucien replied, "I wish not to testify." According to an affidavit submitted by trial counsel and included in the state court record on appeal, counsel had previously encouraged Lucien not to testify. The affidavit is silent as to whether or not, during their conversation immediately preceding Lucien's visit to sidebar, counsel informed Lucien that the prosecution would not seek to introduce his convictions if he testified.

Lucien presented two arguments to the SJC on this matter. First, he argued that when he waived his right to testify, he did so without knowledge of the Commonwealth's concession that it would not impeach him with his past convictions if he testified, and he therefore waived his right to testify unknowingly and involuntarily. Lucien I, 801 N.E.2d at 258-59. Second, he argued that counsel rendered ineffective assistance by neglecting to advise him of all the facts necessary to make a knowing waiver. Id. As evidence supporting both arguments, Lucien pointed to his trial attorney's efforts to dissuade him from testifying, his trial attorney's affidavit stating that counsel consistently advised him not to testify, and Lucien's own affidavit attesting to never knowing the prosecution had represented it would not bring up his past crimes. He complained that he could not have made an informed decision about waiving his right to testify without knowing that

- 19 -

the jury would not learn of his prior criminal conduct, which he believed would come out if he took the stand.

The SJC rejected both of Lucien's arguments, finding that Lucien was, in fact, aware of the prosecution's intentions. It explained that under Massachusetts law, Lucien was required to demonstrate "by a preponderance of the evidence, that, but for his counsel's erroneous advice," Lucien "would have testified in his own defense," id. at 258 (quoting Commonwealth v. Freeman, 564 N.E.2d 11, 15 (Mass. App. Ct. 1990)), and "[i]t is not enough to say that counsel had discouraged him from testifying," id. at 259 (citing Commonwealth v. Cook, 784 N.E.2d 608, 616 (Mass. 2003)). Lucien failed to make that showing, said the SJC, because the only evidence he presented was his own sworn statements that he was not properly advised, and that evidence paled in comparison to the trial judge's observation that, after sidebar, defense counsel spoke at length with Lucien at counsel's table immediately before Lucien approached and verbally waived his right to testify. Id. The SJC found that "[t]he judge was entitled to reject summarily any claim supported only by the defendant's self-serving affidavits, and infer from his own observation of the defendant and counsel at trial that they were conferring over precisely the matter the defendant now claims was never discussed." Id. Because the SJC addressed Lucien's constitutional arguments on the merits,

we afford the SJC's decision AEDPA deference. See Jenkins, 824 F.3d at 152.

Lucien contends that clear and convincing evidence shows that the state court made its decision based on an unreasonable determination of the facts, and that we should therefore grant relief under 28 U.S.C. § 2254(d)(2).[4]  He repeats to us the arguments he made to the SJC and the district court:  his attorney sent numerous letters urging him not to testify; his attorney's affidavit demonstrates that counsel strongly advised him not to testify; those urgings were clearly motivated by the judge's decision not to prohibit the prosecution from introducing his convictions; and if he had known that those convictions were not going to be presented to the jury, he would have made a different choice.

_____

[4] As this court has noted on more than one occasion, the courts of appeal have come to different conclusions concerning whether and to what extent the requirement in § 2254(e)(1) that a state court's factual findings are presumed correct unless rebutted by "clear and convincing evidence" differs from Congress's directive in § 2254(d)(2) that we may overturn a state court's decision on factual grounds only if its findings were "unreasonable." See Smith v. Dickhaut, 836 F.3d 97, 101 (1st Cir. 2016) (citing John v. Russo, 561 F.3d 88, 92 (1st Cir. 2009), and Teti, 507 F.3d at 58-59). As in past cases, we need not confront this issue in the present case:  Lucien himself argues that he "must prove by clear and convincing evidence that the state court's factual findings were incorrect with respect to this issue."  In any event, as in Smith, "even if we were to assess the state court's factual determinations under the [arguably] more petitioner-friendly standard set out in § 2254(d)(2), rather than the more deferential standard in [§ 2254(e)(1)], [Lucien] would still not be entitled to the relief he seeks."  Id.

- 21 -

Certainly, the evidence presented could be construed to support Lucien's account of what happened. The evidence in the record clearly shows that Lucien's trial counsel strongly encouraged him not to testify, and that Lucien persistently voiced his interest in doing so anyway. It also shows that one reason counsel initially discouraged Lucien from testifying was that counsel feared Lucien's past crimes would be presented to the jury as a means of impeaching Lucien if he took the stand, and that this particular concern was ameliorated when the prosecution decided it would not do so. But, as the SJC reasonably observed, Lucien and his attorney actively and repeatedly discussed, on numerous occasions, the possible benefits and detriments of testifying, and counsel advised Lucien that doing so was risky. Furthermore, like Conan Doyle's dog that did not bark, trial counsel's affidavit is conspicuous in its failure to support Lucien's claim that counsel did not tell Lucien of the government's concession at sidebar, despite counsel's willingness to admit fault in other areas of his representation of Lucien. And Lucien does not dispute the trial court's observation that immediately after the government informed the court of its concession, and immediately before Lucien waived his right to testify, Lucien and his trial counsel had a lengthy discussion at counsel's table.

As was the case in Companonio v. O'Brien, "we cannot decide in the petitioner's favor unless we supplant the SJC's

reasoning by adopting his view of arguably conflicting evidence. But '[w]here the record evidence can be interpreted to support a different version, the case here, we must reject such a request.'" 672 F.3d 101, 111 (1st Cir. 2012) (quoting John v. Russo, 561 F.3d 88, 95 (1st Cir. 2009)). For the foregoing reasons, this is just such a case, and Lucien's challenge on this issue fails.

**D.  Counsel's decision not to call experts**

Lucien's trial counsel retained two expert witnesses to testify on Lucien's behalf at trial. According to an affidavit included in the state court record, ballistician Carl Majeskey was prepared to opine on the likely location of Edwards's shooter. According to another affidavit included in the state court record, pathologist Edward Sussman was prepared to opine on how far away Edwards's shooter was when the shot was fired, based on the wound Edwards sustained. Neither witness was in fact called to testify. On state collateral review, Lucien tendered an affidavit from trial counsel stating that counsel decided not to call Sussman and Majeskey "not based alone on James Lucien's best interest," but also that there was "a political component in [his] decision to not call them." He explained that "[t]hese experts were upset due to the fact that the trial was to begin on the day after Thanksgiving and they had planned vacations during that time. Part of the reason for not asking these witnesses to testify was not wanting to anger them." Lucien argued to the SJC that this

- 23 -

amounted to ineffective assistance of trial counsel, because counsel did not have Lucien's best interest in mind, and the jury would likely have acquitted had they heard from Majeskey and Sussman.

In Lucien I, the SJC rejected Lucien's claim, finding that Lucien did not receive ineffective assistance under Commonwealth v. Wright, 584 N.E.2d 621 (Mass. 1992), and Commonwealth v. Adams, 375 N.E.2d 681 (Mass. 1978). See Lucien I, 801 N.E.2d at 257–58. It found that even though other tactical reasons were not given, counsel's affidavit implied that he had some, and that they were based on Lucien's best interest. Id. at 258. Additionally, tactical reasons not to call the witnesses were readily discernable. Id. The SJC noted that the subjects on which Majeskey claimed he could opine were "beyond his field of expertise," particularly concerning "the feasibility of firing a gun from different locations inside and outside the car, matters for which the jury needed no expert to assist them," so it would make strategic sense not to call him to testify. Id. It also found that Sussman's affidavit suggested he would have given testimony that would not have lent meaningful support to Lucien's defense and could have bolstered or at least been consistent with the Commonwealth's pathologist's testimony, making the decision not to call him similarly sound strategy. Id.

- 24 -

Lucien reasserts his ineffective-assistance claim in his petition for a writ of habeas corpus, arguing that the SJC unreasonably applied the law and made unreasonable findings of fact in light of the record evidence when it determined that counsel was not ineffective.  Under federal law, Lucien can show ineffective assistance only if he satisfies the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984), by showing "that counsel's performance fell below an objective threshold of reasonable care and that counsel's deficient performance prejudiced him."  Smith v. Dickhaut, 836 F.3d 97, 103 (1st Cir. 2016) (citing Strickland, 466 U.S. at 687, and Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012)).  In measuring the quality of counsel's performance, "the reasonableness of counsel's tactical or strategic choices" is evaluated with "a heavy measure of deference to counsel's judgments."  Castillo v. Matesanz, 348 F.3d 1, 14 (1st Cir. 2003) (quoting Strickland, 466 U.S. at 691).  Because the standard employed by the SJC in assessing Lucien's ineffective-assistance claim on this issue "is 'at least as protective of the defendant's rights as its federal counterpart,' we may defer under section 2254(d)(1) to its determination."  Kirwan v. Spencer, 631 F.3d 582, 590 n.3 (1st Cir. 2011) (quoting Foxworth v. St. Amand, 570 F.3d 414, 426 (1st Cir. 2009), and citing Wright, 584 N.E.2d at 624); see Castillo, 348 F.3d at 13 (citing Adams, 375 N.E.2d at 685).  In short, Lucien

has the heavy burden of not just arguing that there was a Strickland violation, but that no reasonable jurist could conclude otherwise, at least without relying on an unreasonable view of the facts.

Lucien argues that the SJC made four unreasonable findings of fact. First, he contends that the evidence does not support the SJC's finding that trial counsel acted to advance more than just personal political motivations, arguing that the SJC's decision used "vague" language and "never specified what [the SJC] believed [] those 'other' motivations might be." But the SJC's finding is crystal clear: It found that trial counsel likely felt there were strategic reasons not to call Sussman and Majeskey. See Lucien I, 801 N.E.2d at 258 ("Although counsel did not disclose any other tactical reason [not to call the experts], his affidavit makes clear that he had other reasons."). This was a reasonable way to interpret trial counsel's affidavit, which, by stating that the decision not to call the experts "was not based alone on James Lucien's best interest" (emphasis added), implied that the decision was at least based in part on Lucien's best interest.

Second, Lucien contends that there could have been no strategic reason not to call Sussman because Sussman was prepared to testify that Edwards's wound was a "distant gunshot wound," and, according to Lucien, distant "could not possibly be interpreted to mean from the back seat of the car." But Sussman's

affidavit only asserts that the gunshot wound was "distant" based on the fact that the autopsy report, pathology report, aerology report, and ballistics report "indicated that there was no associated stippling or powder soot in the wound of the deceased," not based on some assessment of the approximate distance from which the fatal shot must have been fired. Nothing in the record indicates that Sussman was prepared to testify that "distant" meant anything other than "far enough away that there would be no soot or stippling in the wound"--testimony that would have been consistent with testimony given by the Commonwealth's pathologist that it would be possible for there to be no soot or stippling in a wound if a victim's clothes caught the soot and stippling, even if the fatal shot was fired from very close range. Putting on a defense witness who could only place the origin of the shot outside the victim's clothes so as to leave no soot or stippling might well have led the jury to draw a negative inference from such a meager offering from a defendant-retained expert. Counsel could have reasonably thought it better to rely on simply cross-examining the government witnesses.

Third, Lucien argues that Majeskey was just as well credentialed as the Commonwealth's ballistician, so the SJC made an unreasonable determination that he was going to testify to matters beyond his ken. Lucien's argument, however, is misplaced: The SJC found not that Majeskey was less qualified to testify than

was the Commonwealth's expert witness, but rather that Majeskey's training as a ballistician did not qualify him to give expert testimony on matters for which the jury required no expert opinion, like whether it was "practical" to fire a weapon from an awkward angle inside a vehicle. Id. That finding was clearly not unreasonable.

Finally, Lucien contends that the SJC unreasonably found that one tactical reason trial counsel likely had for not calling Majeskey and Sussman was that doing so would be risky, as they would have offered testimony that would have been consistent with and cumulative of the testimony of the Commonwealth's pathologist. Lucien notes that in addition to Sussman being prepared to testify that Edwards suffered a "distant gunshot wound," Majeskey was prepared to testify that it was likely that the gun was "fired by someone reaching across the front passenger seat or up to a foot or two from the car with the passenger door open, or . . . up to a foot or two from the opened window of the closed passenger door." But Majeskey also affirmatively stated in his affidavit that the Commonwealth's theory that the fatal shot was fired from within the car was "possible." The SJC was not unreasonable in determining that counsel may reasonably have concluded that this testimony would leave counsel with less room to attack the Commonwealth's experts.

We are thus left to determine whether the SJC's application of federal law to these facts was unreasonable under 28 U.S.C. § 2254(d)(1). It is not contrary to, nor an unreasonable application of, Supreme Court precedent to reject an ineffective assistance claim where an attorney made a choice, at least partly motivated by strategy, not to call witnesses who would not have positively contributed to (and, indeed, might possibly have negatively impacted) the defendant's case. See Hensley v. Roden, 755 F.3d 724, 737 (1st Cir. 2014); Phoenix v. Matesanz, 233 F.3d 77, 81–85 (1st Cir. 2000). Even if we were to regard such a choice as negligent, that would not be nearly enough:  Our review of ineffective assistance claims like this one is "doubly deferential," requiring Lucien to show that counsel's performance was objectively unreasonable and that no reasonable jurist could come to the contrary conclusion the state court drew. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).  This claim therefore fails.

## III.  Conclusion

For the foregoing reasons, we affirm.

- 29 -